J-S43031-15

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
|---|---|
| Appellee | |
| v. | |
| NATHANIEL A. SPADY | |
| Appellant | No. 3090 EDA 2013 |

Appeal from the Judgment of Sentence October 1, 2013
In the Court of Common Pleas of Delaware County
Criminal Division at No(s): CP-23-CR-0001950-2010;
CP-23-CR-0007802-2012

BEFORE:  GANTMAN, P.J., PANELLA, J., and OLSON, J.

MEMORANDUM BY GANTMAN, P.J.:                **FILED AUGUST 25, 2015**

Appellant, Nathaniel A. Spady, appeals from the judgment of sentence entered in the Delaware County Court of Common Pleas, following his jury trial convictions for nine (9) counts of sexual abuse of children, two (2) counts each of rape of a child, statutory sexual assault, involuntary deviate sexual intercourse ("IDSI"), and indecent assault, and one (1) count each of corruption of minors and criminal use of communication facility.[1]  We affirm the convictions but vacate the judgment of sentence and remand for resentencing.

---

[1] 18 Pa.C.S.A. §§ 6312, 3121(c), 3122.1, 3123, 3126, 6301, 7512, respectively.

In its opinion, the trial court fully and correctly set forth the relevant facts and procedural history of this case. Therefore, we have no reason to restate them.

Appellant raises four issues for our review:

> DID THE TRIAL COURT ERR IN PROHIBITING APPELLANT FROM PRESENTING TESTIMONY AND EVIDENCE THROUGH [N.K.] AND HIMSELF OF AN ADMISSION BY AN ALTERNATE PERPETRATOR, [A.C., JR.] ("BUTCHY") THAT HE WAS THE INDIVIDUAL WHO SEXUALLY ABUSED THE VICTIM?
>
> DID THE TRIAL COURT ERR IN PROHIBITING APPELLANT FROM QUESTIONING THE COMMONWEALTH WITNESSES AND PRESENTING EVIDENCE ABOUT THE ALLEGED SEXUAL ABUSE OF THE VICTIM BY…, [A.C., JR.] ("BUTCHY")[?]
>
> DID THE TRIAL COURT ERR BY DENYING APPELLANT HIS 6[TH] AMENDMENT RIGHT TO CONFRONTATION BY BEING PROHIBITED FROM CROSS-EXAMINING [VICTIM] AND COMMONWEALTH WITNESSES ABOUT [A.C., JR.] ("BUTCHY"), THE ALTERNATE PERPETRATOR?
>
> DID THE TRIAL COURT ERR IN DENYING APPELLANT'S MOTION TO SUPPRESS HIS STATEMENT GIVEN ON DECEMBER 18, 2009 SINCE IT WAS COERCED AND INDUCED UNDER A WAIVER THAT WAS NOT KNOWING, VOLUNTARY AND INTELLIGENT?

(Appellant's Brief at 4).

After a thorough review of the record, the briefs of the parties, the applicable law, and the well-reasoned opinion of the Honorable Gregory M. Mallon, we conclude Appellant's issues merit no relief. The trial court opinion comprehensively discusses and properly disposes of the questions presented. (**See** Trial Court Opinion, filed August 21, 2014, at 12-20 and

Appendix A) (finding: **(1-2)** court properly prohibited Appellant from presenting evidence regarding Butchy as alternate perpetrator; Appellant sought to question his grandfather, N.K., about phone call N.K. had received, wherein Butchy admitted molesting Victim; court found proposed testimony constituted inadmissible hearsay; although Butchy allegedly made statement against penal interest and was unavailable at time of trial, Appellant failed to show statement was made under reliable circumstances; moreover, proposed testimony amounted to collateral matter that did not make it less likely Appellant had committed offenses at issue; proposed testimony would only show that Butchy possibly committed separate sexual assault; **(3)** court did not deny Appellant's right to confront witnesses against him; defense counsel vigorously cross-examined Commonwealth's witnesses; court did not obstruct Appellant's ability to subpoena Butchy; additionally, Victim identified Appellant as abuser; Appellant admitted molesting Victim and provided details about sexual assaults; **(4)** police interview with Appellant on December 18, 2009 did not amount to functional equivalent of arrest; Appellant voluntarily drove to detective's office and agreed to answer all questions; detective informed Appellant he could stop answering questions at any time; interview lasted approximately thirty minutes, and Appellant was not handcuffed or restrained in any way; even if interview constituted custodial detention, detective gave Appellant proper warnings and Appellant executed knowing and voluntary waiver of rights

- 3 -

after warnings[2] from detective). Accordingly, we affirm Appellant's convictions on the basis of the trial court opinion.

Nevertheless, we see in the certified record that Appellant was sentenced on the convictions for rape of a child and IDSI, pursuant to 42 Pa.C.S.A. § 9718.[3] Section 9718(a)(1) sets forth a mandatory minimum sentence of ten years' imprisonment where a defendant is convicted of IDSI involving a victim who is less than sixteen (16) years of age. Section 9718(a)(3) sets forth a mandatory minimum sentence of ten (10) years' imprisonment where a defendant is convicted of rape of a child. Section 9718(c) states that these statutory provisions shall not be an element of the crime and applicability of the statute shall be determined at sentencing by a preponderance of the evidence. 42 Pa.C.S.A. § 9718(c).

Recently, this Court directly addressed the constitutionality of Section 9718 in **Commonwealth v. Wolfe**, 106 A.3d 800 (Pa.Super. 2014), where the trial court had imposed mandatory minimum sentences for multiple IDSI convictions, pursuant to Section 9718(a)(1). On appeal, this Court struck

---

[2] **Miranda v. Arizona**, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

[3] The sentencing order does not specifically mention imposition of the mandatory minimum sentences. Nevertheless, the Commonwealth informed the court of the applicability of the mandatory minimum statute immediately after the announcement of the verdict. (**See** N.T. Trial, 12/6/12, at 259.) At the subsequent sentencing hearing, the court announced it had considered "[t]he mandatory requirements of four of the convictions." (**See** N.T. Sentencing Hearing, 5/8/13, at 165.) Thereafter, the court sentenced Appellant in compliance with Section 9718.

- 4 -

down Section 9718, as facially unconstitutional. *Id.* (citing *Alleyne v. United States*, ___ U.S. ___, 133 S.Ct. 2151, 186 L.Ed.2d 314 (2013). *Alleyne* is applicable to all criminal cases still pending on direct review. *Commonwealth v. Newman*, 99 A.3d 86 (Pa.Super. 2014) (*en banc*).

> "An unconstitutional statute is ineffective for any purpose [as] its unconstitutionality dates from the time of its enactment and not merely from the date of the decision holding it so." *Commonwealth v. Michuck,* 686 A.2d 403, 407 ([Pa.Super.] 1996), *appeal denied,* 548 Pa. 668, 698 A.2d 593 (1997). "If no statutory authorization exists for a particular sentence, that sentence is illegal and subject to correction. An illegal sentence must be vacated." *Commonwealth v. Stevenson,* 850 A.2d 1268, 1271 (Pa.Super. 2004) (*en banc*). We can raise and review an illegal sentence *sua sponte. Commonwealth v. Oree,* 911 A.2d 169, 172 (Pa.Super. 2006), *appeal denied,* 591 Pa. 699, 918 A.2d 744 (2007).

*Commonwealth v. Muhammed*, 992 A.2d 897, 903 (Pa.Super. 2010).[4]

Instantly, the jury convicted Appellant on two counts each of rape of a child and IDSI of a child. At sentencing, the court appears to have applied Section 9718. Given this Court's binding decision in *Wolfe*, we must vacate the judgment of sentence in its entirety and remand for resentencing. *See Commonwealth v. Bartrug*, 732 A.2d 1287 (Pa.Super. 1999), *appeal denied*, 561 Pa. 651, 747 A.2d 896 (1999) (holding sentencing error on one count in multi-count case generally requires all sentences for all counts to be

_____

[4] Appellant's reply brief also raises the legality of his sentence, based *inter alia* on *Alleyne*, *Commonwealth v. Hopkins*, ___ A.3d ___, 2015 WL 3949099 (Pa. June 15, 2015), and *Wolfe*.

vacated so court can restructure entire sentencing scheme). ***See also***

***Commonwealth v. Goldhammer***, 512 Pa. 587, 593, 517 A.2d 1280, 1283

(1986), *cert. denied*, 480 U.S. 950, 107 S.Ct. 1613, 94 L.Ed.2d 798 (1987))

(stating generally if appellate court alters overall sentencing scheme, then

remand for re-sentencing is proper). Accordingly, we affirm Appellant's

convictions but vacate the judgment of sentence and remand for

resentencing without the mandatory minimums.

Judgment of sentence vacated; case remanded for resentencing.

Jurisdiction is relinquished.

Judgment Entered.

_____

Joseph D. Seletyn, Esq.
Prothonotary


Date: 8/25/2015

## IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

| | |
|---|---|
| **COMMONWEALTH OF PENNSYLVANIA** | **NO.** 1950-10 |
| | 7802-12 |
| **v.** | |
| **NATHANIEL SPADY** | |

## OPINION

**Mallon, J.**                                                                 Filed: 8/21/14

Nathaniel Spady, appeals from the Judgment of Sentence entered by this Court on May 8, 2013. The nature and history of the case are as follows:

### FACTUAL AND PROCEDURAL HISTORY

Following an investigation by the Criminal Investigation Division of Delaware County, the Defendant was arrested and charged with rape of a child, involuntary deviate sexual intercourse, and related offenses in connection with allegations that he engaged in sexual conduct with his ten year old cousin, S.P. Following a three day trial, a jury found the Defendant guilty of two (2) counts of rape,[1] two (2) counts of statutory sexual assault,[2] two (2) counts of involuntary deviate sexual intercourse,[3] two (2) counts of indecent assault,[4] one count of corruption of a minor,[5] four (4) counts of sexual abuse of children: photographing or depicting on computer sexual acts,[6] five (5) counts of sexual abuse of children: possession of child pornography,[7] and one count of criminal use of a communication facility.[8][9]

---

[1] 18 Pa.C.S.A § 3121(c). This charge was part of the case docketed at 1950-10.
[2] 18 Pa.C.S.A § 3122.1. This charge was part of the case docketed at 1950-10.
[3] 18 Pa.C.S.A § 3123(b). This charge was part of the case docketed at 1950-10.
[4] 18 Pa.C.S.A § 3126(a) (7). This charge was part of the case docketed at 1950-10.
[5] 18 Pa.C.S.A § 6301(a) (1). This charge was part of the case docketed at 1950-10.
[6] 18 Pa.C.S.A § 6312(d) (1). This charge was part of the case docketed at 7802-12.
[7] 18 Pa.C.S.A § 6312(d) (1). This charge was part of the case docketed at 7802-12.
[8] 18 Pa.C.S.A §7512(a). This charge was part of the case docketed at 7802-12.



On May 8, 2013, this Court sentenced the Defendant as follows:

**On docket number 1950-10:**

- Count 1: rape of a child, a felony of the first degree, 14 to 28 years of state incarceration with 12 years of consecutive probation.

- Count 2: rape of a child, a felony of the first degree, 10 to 20 years of state incarceration concurrent to count 1, with 10 years of consecutive probation, concurrent to count 1.[10]

- Count 7: involuntary deviate sexual intercourse, a felony of the first degree, 10 to 20 years of state incarceration concurrent to count 2, with 10 years of consecutive probation, concurrent to count 2.

- Count 8: involuntary deviate sexual intercourse, a felony of the first degree, 10 to 20 years of state incarceration concurrent to count 7, with 10 years of consecutive probation, concurrent to count 7.

- Count 22: indecent assault, a felony of the third degree, one to two years of state incarceration concurrent to count 8, with 5 years of consecutive probation, concurrent to count 8.

- Count 23: indecent assault, a felony of the third degree, one to two years of state incarceration concurrent to count 22, with 5 years of consecutive probation, concurrent to count 22.

- Count 31: corruption of minors, a misdemeanor of the first degree, one to two years of state incarceration concurrent to count 23, with 5 years of consecutive probation, concurrent to count 23.

Additionally, the Defendant was found to be ineligible for RRRI, was ordered to comply with the rules and regulations governing probation and parole, and ordered to submit to DNA testing and lifetime registration under Megan's Law. The Defendant was ordered to have no direct or indirect contact with the victim and the computers and peripherals were ordered to be seized.

---

[9] The Defendant's first trial resulted in a hung jury on February 6, 2012.
[10] Counts 4 and 5 merged for sentencing purposes.

2

**On docket number 7802-12:**

- Count 5: child pornography, a felony of the second degree, two to four years of state incarceration with 6 years of consecutive probation.

- Count 6: child pornography, a felony of the second degree, two to four years of state incarceration concurrent to count 5, with 6 years of consecutive probation, concurrent to count 5.

- Count 7: child pornography, a felony of the second degree, two to four years of state incarceration concurrent to count 6, with 6 years of consecutive probation, concurrent to count 6.

- Count 8: child pornography, a felony of the second degree, two to four years of state incarceration concurrent to count 7, with 6 years of consecutive probation, concurrent to count 7.

- Count 9: child pornography, a felony of the third degree, one to two years of state incarceration concurrent to count 8, with 5 years of consecutive probation, concurrent to count 8.

- Count 10: child pornography, a felony of the third degree, one to two years of state incarceration concurrent to count 9, with 5 years of consecutive probation, concurrent to count 9.

- Count 11: child pornography, a felony of the third degree, two to four years of state incarceration concurrent to count 10, with 5 years of consecutive probation, concurrent to count 10.

- Count 12: child pornography, a felony of the third degree, two to four years of state incarceration concurrent to count 11, with 5 years of consecutive probation, concurrent to count 11.

- Count 13: child pornography, a felony of the third degree, two to four years of state incarceration concurrent to count 12, with 5 years of consecutive probation, concurrent to count 12.

- Count 59: criminal use of a communication facility, a felony of the third degree, one to two years of state incarceration concurrent to count 13, with 5 years of consecutive probation, concurrent to count 13.

Post sentence motions were filed on May 16, 2013, and after a hearing and extensive briefs from counsel, this Court denied in part and granted in part the Defendant's prayer for relief. In an Order dated October 1, 2013, the Court granted the Defendant's motion for

reconsideration of his sentence and amended the Defendant's sentence as follows: On docket #1950-10, Count 1, rape of a child, the court changed its initial sentence of 14 to 28 years of state incarceration with 12 years of consecutive probation to 12 to 24 years of incarceration followed by 16 years of consecutive probation. On docket #7802-12, Count 5, child pornography, the Court changed its initial sentence of two to four years of state incarceration with 6 years of consecutive probation to two to four years of incarceration to run concurrent to the sentence imposed on docket #1950-10. The rest of the sentence remained the same. Thereafter, on November 15, 2013, Appellant filed the instant appeal, necessitating this Opinion.[11]

## FACTUAL BACKGROUND

On June 24, 2009, Lieutenant David Peifer, of the Delaware County Criminal Investigation Division, conducted an online internet investigation in an attempt to identify individuals that were sharing and possessing child pornography through the Gnutella network. As a result of his investigation, Lieutenant Peifer captured two files containing child pornography. Lieutenant Peifer downloaded the files and traced the IP address to a computer located in Delaware County, Pennsylvania. The IP address was assigned to Verizon Internet Services, and Lieutenant Peifer obtained a subpoena in order to identify the subscriber. The subscriber was identified as N. K. who lived in Upper Darby, Pennsylvania. N.T., 12/4/2012, p. 52. Lieutenant Peifer obtained a search warrant, and went to the residence on July 14, 2009. *Id.* at 52-53; *see also* Affidavit of Probable Cause.

When Lieutenant Peifer arrived at the residence, he advised N. K. that a computer located at the address had been sharing child pornography. Three computers were seized from the residence, including one in the basement that had a user account name of

---

[11] Counsel was appointed for the Defendant, and several extensions for her 1925(b) statement were granted as she reviewed the extensive record in this case.

"Devon" and which was identified as the sharing computer. N.T., 12/4/2012, pp. 53-54. Lieutenant Peifer was told that Devon lived in the basement of the house. *Id.* at 54. Devon was not home at the time the search warrant was executed, and Lieutenant Peifer told Devon's grandfather, N. K.         , that he would like to speak to Devon. *Id.* at 55.

The following day, July 15, 2009, Nathaniel "Devon" Spady, (hereinafter "Defendant"), went to the Office of the Criminal Investigation Division (hereinafter "CID"), located at the Delaware County Courthouse. *Id.* at 55. He was interviewed by Lieutenant Peifer. During the interview, the Defendant told Lieutenant Peifer that he used a file sharing program called LimeWire on his computer and searched for files by entering search terms such as "teen" and "girls." *See* Commonwealth Exhibit C-6. The Defendant's interview with Lieutenant Peifer was tape recorded. This tape was played for the jury at trial and admitted as Commonwealth Exhibit C-5. N.T., 12/4/2012, p. 57. Following the interview, the Defendant left with his grandfather. *Id.* at 60.

After the computers, which included an Apple, a Compaq Presario, and a Dell Latitude, were seized from the residence, they were sent to Harrisburg to be analyzed. *Id.* at 62. A report was provided to CID in December of 2009. *Id.* The report revealed that ninety-six (96) files containing images of children under the age of eighteen engaged in sexual acts or poses were recovered from the computers. N.T., 12/5/12, v. I, p. 12; *see also* Commonwealth Exhibit C-24. Nine (9) files of apparent child pornography were recovered from the Apple computer and eighty-seven (87) files of apparent child pornography were recovered from the Compaq Presario computer. N.T., 12/5/12, v. I, p. 12. At trial, counsel for the Commonwealth and Defendant stipulated that the images and videos found on the three computers depicted a child engaging in a prohibited sexual act or the simulation of such an act, and that the child at the time [was] under

5

the age of 18. *See* Commonwealth Exhibit C-27. The report, authored by Special Agent David Buckwash, an expert in the field of computer forensics, explained that five (5) notable pictures were found on the Apple computer, ninety-three (93) notable pictures were found on the Compaq Presario, and seven (7) notable pictures were found on the Dell Latitude. N.T., 12/5/12, v. I, p. 14.

Agent Buckwash described to the jury that apparent pictures are those that "when viewed, [that] are apparent that they are child pornography." *Id.* at 14. Agent Buckwash described notable pictures as "a picture that if you look at it, it's not 100 percent apparent that it is child pornography." *Id.* at 13. He explained that notable pictures are generally extracted and brought to an investigator and then to someone with a certain degree of medical expertise that can confirm or deny that the picture does in fact depict a person under the age of 18. *Id.* at 13.

Four (4) images were taken by a camera or cell phone and were linked to a Yahoo email account in the Defendant's name. N.T., 12/4/2012, pp. 61-64. Two (2) photos were found on an Apple computer that was located in the basement of the residence and were downloaded by a user on June 13, 2009. N.T., 12/4/12, pp. 126-27; *see* also Commonwealth Exhibit C-23; Commonwealth Exhibit C-21. Several more photographs were downloaded by a user on June 23, 2009 and July 8, 2009. *Id.* at 129. Agent Buckwash testified to a reasonable degree of forensic certainty that eight pictures recovered from the Apple computer were viewed and saved by a user named "Devon." N.T., 12/5/12, v. I, pp. 26-27.

EXIF Data[12] was also extracted from the computer. *Id.* at 33. The report found that the images recovered from the Apple computer were taken with a Samsung cell phone on June 23,

---

[12] EXIF stands for exchangeable image file format. *See* N.T., 12/5/12, v. I, pp. 32-33. "EXIF is a standard used for digital pictures. And EXIF data consists of data that's embedded in each picture file taken with a digital camera or a cell phone with a digital camera. And the EXIF data

2009. *Id.* at 34. These files were accessed by a Yahoo username "Devon." *Id.* at 35-36. After he received the report, Lieutenant Peifer contacted the Defendant's grandfather and asked him if he would bring the Defendant back to CID headquarters so that they could talk about some of the images that were found on the computer. N.T., 12/4/12, p. 65.

When the Defendant arrived for the second interview in early December of 2009, Lieutenant Peifer told him that he didn't have to answer any questions, that he wasn't under arrest, and that he was free to leave at any time *Id.* at 65-66. Lieutenant Peifer told the Defendant that they found some pictures on the computer, and asked the Defendant if he knew who the girl in the pictures was. *Id.* at 66. The Defendant told the Lieutenant that he did not know who she was. *Id.* The Defendant's grandfather, N. K. , who was also present in the interview room, then looked at the Defendant and said "you know who that is. That's your cousin." *Id.* The Defendant then told Lieutenant Peifer that it was his cousin in the picture. *Id.* This interview was not recorded. *Id.* at 67. N. K. then provided the Lieutenant with a name and address for the girl in the photographs and the information was then passed on to Detective Robin Clark. *Id.* The Defendant was permitted to leave following this interview. *Id.*

Detective Robin Clark of CID interviewed the then ten year old victim, S.P., on December 11th and December 16th of 2009. N.T., 12/4/12, pp. 6, 17, 68. These interviews were tape recorded and admitted as evidence and played and published to the jury at trial. *Id.* at 10-12, 18-19; *see* Commonwealth Exhibits C-17 and C-20.

S.P. often slept in the living room at her grandparents' house. When she was seven, eight and nine, she would go to their home a lot. N.T., 12/3/12, pp. 112-13. When she was sleeping,

---

includes things like the make and model of the device used to take that picture, the date and time it was taken, shutter settings, F-stop settings, the resolution of the picture, things like that." *Id.* (testimony of Agent Steven Arter)

the Defendant would wake her up and "force [her] to do stuff." *Id.* at 115-116. He would pull her pants down and force her to perform oral sex on him. *Id.* at 116-117. S.P. testified that the Defendant put his penis in her vagina "just a little bit." *Id.* at 118-119. She explained that this occurred in the basement of the house that it hurt. *Id.* at 120. S.P. testified that the Defendant took pictures of her in the kitchen with his cell phone, and he instructed her to pull her shirt up. *Id.* at 122. She explained that these incidents occurred over a long period of time, and that she was afraid that she would get in trouble if she told anyone. *Id.* at 125.

Following her interviews with S.P., Detective Clark made arrangements for the Defendant to come in to CID for a third interview.[13] N.T., 12/4/12, p. 68. On December 18, 2009, the Defendant arrived to CID after 5 P.M. *Id.* at 69. The Defendant sat in a conference room with Lieutenant Peifer and Detective Clark and was given his *Miranda* Warnings. *Id.* at 69. Detective Clark went over the Defendant's rights by utilizing a form entitled "Criminal Investigation Division Procedure Before Questioning" with the Defendant. *Id.* at 69; *see also* Commonwealth Exhibit C-7. The form was dated 12/18/09 with a time of either 5:03 or 5:08 P.M.[14] *Id.* at 70. A tape recorder was turned on at 5:48 P.M. and turned off at 6:08 P.M. *Id.* at 103. During the interview, the Defendant admitted that he took the photographs of his cousin S.P. with his cell phone. N.T., 12/4/12, p. 82. He also admitted to engaging in sexual acts with his cousin when she was 8 or 9 years old. *See* Commonwealth Exhibit C-9. Following this interview, the Defendant was placed under arrest and charged with the crimes set forth above. N.T.,12/4/12, p. 83.

The Defendant took the stand at trial and denied having any sexual contact with S.P., denied taking any photographs of his cousin, and denied downloading child pornography. N.T.,

---

[13] By this time, the Defendant was 18, so his grandfather was not called. N.T., 12/4/12, p. 68.
[14] The handwriting documenting the time on this document was illegible.

12/5/12, v. II, p. 257. According to the Defendant, before he went into the initial interview on July 15, 2009 with Lieutenant Peifer, he and his grandfather had agreed that the Defendant would "cooperate with [Lieutenant Peifer]" and "tell [Lieutenant Peifer] what he wants" because he was a juvenile and "in the law they're sometimes [] lighter on juveniles than they are on adults." *Id.* at 262-63. The Defendant also testified that he believed that S.P. had a crush on him, and that a result, he had made it a point to stay away from her. *Id.* at 278.

Throughout the Defendant's trial there was conflicting testimony presented with regard to the facts underlying the encounter between the Defendant and the detectives on December 18, 2009. The Defendant admitted to freely signing the Miranda form provided by the detectives. *Id.* at 294. The Defendant also agreed that he consented to having the interview recorded. *Id.* at 294-95. According to the Defendant, the detectives did not start the tape at the beginning of the interview. *Id.* at 294-95. The Defendant testified that during the 45 minutes that elapsed from when he signed the Miranda form until the tape was started, the detectives laid out their case to him. *Id.* Lieutenant Peifer agreed that they had conducted a "pre-interview" of the Defendant before they turned on the tape that lasted for at least a half an hour. N.T., 12/4/12, pp. 112-13; 124-25. According to both Lieutenant Peifer and the Defendant, Lieutenant Peifer and Detective Clark confronted the Defendant with the accusations made by S.P. during this time. *Id.* Lieutenant Peifer testified that he told the Defendant about the general accusations made by S.P., and that the Defendant provided the details. *Id.* at 113. According to the Defendant, Lieutenant Peifer and Detective Clark were threatening and coercive. *Id.* at 289-301. According to the Defendant, Lieutenant Peifer took his keys when he arrived at the courthouse on December 18, 2009. N.T., 12/5/12, v. II, p. 288. The Defendant claimed that Lieutenant Peifer screamed at him. *Id.* at 297-99. On the other hand, Lieutenant Peifer testified that he did not make any threats to

9

the Defendant. N.T., 12/4/12, p. 71. Lieutenant Peifer conceded that the Defendant initially denied the allegations against him. *Id.* at 104-06.

The Defendant testified at trial that he gave the detectives the names of several other suspects that he believed they should be interviewed about his cousin's accusations. N.T., 12/5/12, v. II, p. 291. According to the Defendant, "[t]hey weren't trying to hear that. They wasn't trying to hear anything I had to say. The only thing they were trying to say is this is what she said and this is what you're going to say." *Id.* at 291. The Defendant denied having abused S.P. According to the Defendant, during the 45 minutes preceding the taped recorded interview, he cried and denied the allegations against him, and then agreed to provide a confession, as he claimed the detectives wanted. *Id.* at 291-301. The Defendant maintained that none of what he said in his statement was true. *Id.* at 302.

The jury came back and found the Defendant guilty of the crimes set forth above. In his concise statement of matters complained of on appeal pursuant to Pennsylvania Rule of Appellate Procedure 1925(b), the Defendant asserts the following:

(1) Whether the Trial Court erred in refusing to grant Defendant's Motion to Suppress Defendant's statements of July 15, 2009 and December 18, 2009 since both statements were coerced, induced and given under duress and therefore, not voluntarily given.

(2) Whether the Trial Court erred in limiting the testimony of the Defendant's expert witness, Dr. Glen Skoler, concerning false confession evidence, at the request of the Commonwealth in the second trial despite the Court's ruling at the first trial whereby the witness was permitted to testify more completely and which resulted in a hung jury.

(3) Whether the Trial Court erred in prohibiting the Defendant from presenting testimony through N. K.        or Nathaniel Spady or presenting any evidence of an admission by an alternate perpetrator, A. C.      , Jr. (a/k/a Butchy) that he was the individual who sexually abused the victim.

(4) Whether the Trial Court erred in prohibiting the Defendant from presenting evidence or questioning the Commonwealth witnesses about the alleged sexual abuse of the

10

victim by an alternate perpetrator, Ȧ-Cȷ , Jr. (a/k/a Butchy), who was the step-brother of the alleged victim and who had made an admission that he had abused the victim.

(5) Whether the Trial Court erred by denying the Defendant's 6th Amendment right to present evidence on his behalf and his right to confrontation when the Court ruled that the Defendant could not make any reference to Ȧ. Cȷ ι, Jr. (a/k/a Butchy) as the alternative perpetrator at trial.

(6) Whether the evidence was insufficient to convict the Defendant on the charge of child pornography since the Commonwealth was unable to prove beyond a reasonable doubt that Defendant was the culprit and that he intentionally or knowingly possessed such materials since there was testimony that multiple persons had access to the three computers confiscated from within the home where the Defendant resided and, furthermore, the verdict was contrary to the weight of the evidence.

(7) Whether the evidence was insufficient to convict the Defendant on the charge of Criminal Use Communication Facility since the Commonwealth was unable to prove beyond a reasonable doubt that this Defendant was the individual that used any of the computers that were confiscated in the commission of a felony or that the Defendant was the individual who owned, possessed or had access to the cell phone depicting the image of the victim and, furthermore, the verdict was contrary to the weight of the evidence.

(8) Whether the evidence was insufficient to convict the Defendant on the charge of Rape of a Child since the Commonwealth was unable to prove beyond a reasonable doubt that a crime occurred on Thanksgiving 2009 since the victim did not testify that the incident occurred on that date and there was testimony that several persons were awake and present in the room throughout the night where the alleged incident had occurred and, furthermore, the verdict was contrary to the weight of the evidence.

(9) Whether the evidence was insufficient to convict the Defendant on the charge of Statutory Sexual Assault since the Commonwealth was unable to prove beyond a reasonable doubt that a crime occurred on Thanksgiving 2009 since the victim did not testify that the incident occurred on that date and there was testimony that several persons were awake and present in the room throughout the night where the alleged incident had occurred and, furthermore, the verdict was contrary to the weight of the evidence.

(10) Whether the evidence was insufficient to convict the Defendant on the charge of Involuntary Deviate Sexual Intercourse with a Child since the Commonwealth was unable to prove beyond a reasonable doubt that the crime occurred on Thanksgiving 2009 since the victim did not testify that the incident occurred on that date and there was testimony that several persons were awake and present in the room throughout

11

the night where the alleged incident had occurred and, furthermore, the verdict was contrary to the weight of the evidence.

(11) Whether the evidence was insufficient to convict the Defendant on the charge of Indecent Assault since the Commonwealth was unable to prove beyond a reasonable doubt that a crime occurred on Thanksgiving 2009 since the victim did not testify that the incident occurred on that date and there was testimony that several persons were awake and present in the room throughout the night where the allege incident occurred and, furthermore, the verdict was contrary to the weight of the evidence.

## DISCUSSION

### A. Motion to Suppress

Defendant first argues that the Court erred in refusing to grant Defendant's Motion to Suppress. This Court held a hearing on Appellant's "Motion to Suppress Statements" on November 9, 2010, and on March 1, 2011, the Court issued an Order denying said motion.

The appellate court's standard of review in addressing a challenge to a trial court's suppression of evidence ruling in a criminal trial is limited to determining whether the factual findings are supported by the record and whether the legal conclusions drawn therefrom are correct. *Commonwealth v. McDonald*, 881 A.2d 858, (Pa. Super. 2005). This Court's Order setting forth its findings of fact and conclusions of law is attached to this Opinion and is entitled "Appendix A." The Court respectfully submits that it did not err in denying said motion.

### B. Expert Testimony

The Defendant also maintains that the Court erred in limiting the testimony of the Defendant's expert witness concerning false confession evidence.

The admissibility of an expert opinion is governed by Rule 702 of the Pennsylvania Rules of Evidence and provides: "[i]f scientific, technical or other specialized knowledge beyond that possessed by a layperson will assist the trier of fact to understand the evidence or to determine a fact in issue, a witness qualified as an expert by knowledge, skill, experience, training or

12

education may testify thereto in the form of an opinion or otherwise." Pa.R.E. 702. Expert testimony is admissible when it involves explanations and inferences not within the range of ordinary training, knowledge, intelligence, and experience. *Commonwealth v. Minerd*, 562 Pa. 46, 753 A.2d 225 (2000).

Moreover, the admission of expert scientific testimony is an evidentiary matter for the trial court's discretion and should not be disturbed on appeal unless the trial court abuses its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous. *Commonwealth v. Szakal*, 50 A.3d 210, 227 (Pa. Super. 2012) (*citing Grady v. Frito-Lay, Inc.*, 576 Pa. 546, 839 A.2d 1038, 1046 (2003)).

In the case *sub judice*, the Defendant offered the testimony of Dr. Glen Skoler at trial. Prior to commencement of trial, the Commonwealth made a motion to exclude any testimony from Dr. Skoler regarding coerced confessions, and argued that the concept is one within the purview of the general understanding of a potential juror. The Commonwealth provided this Court with the Superior Court case of *Commonwealth v. Szakal*. In *Szakal*, the Superior Court determined that the trial court did not err in denying a defendant's request to call an expert in the field of false confessions given that the testimony would not assist the triers of fact. However, in the instant case, this Court *did not* exclude the testimony of Dr. Skoler as in *Szakal*, but rather, permitted him to testify *generally* with respect to false confessions. The Court respectfully submits that the Defendant's claim to the contrary is without merit.

## C. Three

Next, the Defendant claims that the Court erred in prohibiting any testimony "through

13

N. K.    or Nathaniel Spady or presenting any evidence of an [alleged] admission [made] by an [alleged] alternate perpetrator, A. C.    , Jr. (a/k/a Butchy) that he was the individual who sexually abused the victim." *See* Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), p. 1.

In the case *sub judice*, defense counsel made an offer of proof regarding defense witness N. K.    . *See* 12/5/12, v. 1, p. 41. N. K.    is the grandfather of both the Defendant and the victim in this case, and he legally adopted the Defendant as his son. *Id.* at 43, 48. N. K.'s daughter, L. C.    , is married to a man named A. C.    . *Id.* Butchy is A C.'s son *Id.* at 43-44. A. C., Jr. goes by the nickname "Butchy." *Id.* at 44. N. K.    was called to the stand out of the presence of the jury during the Defendant's trial and he testified that Butchy had called him following the Defendant's first trial and told him that he wanted to get something off his conscience – that he was the one that had been molesting S.P. *Id.* at 45. This alleged telephone call allegedly occurred in March, approximately one month after the Defendant's first trial ended in a mistrial.[15] *Id.* at 49. According to N. K.    , he told Butchy to call his stepmother [S.P.'s mother], his dad, and the Defendant and tell them about this. *Id.* He gave Butchy the Defendant's telephone number and told Butchy to let him know how he made out after he called the Defendant. *Id.* at 45. According to N. K.    , he did not contact the police of tell anyone else about this conversation. *Id.* at 50. According to N. K.    , after he received the initial call from Butchy, Butchy called him once more and asked for the Defendant's number. *Id.* at 50. That was the last time that N. K.    heard from Butchy. *Id.*

During the Defendant's trial and out of the presence of the jury, this Court heard

_____

[15]The Defendant's first trial ended with a hopelessly deadlocked jury and a mistrial was declared.

argument on the admissibility of N.K.'s proposed testimony regarding what Butchy had allegedly told him.[16] [17] Following argument, this Court found that the proposed testimony was hearsay and not admissible, even though on its face was a declaration against penal interest. N.T., 12/5/12, pp. 183-199. Additionally, this Court found that this evidence was also a collateral matter that would not make it any less likely that the Defendant had in fact committed the crimes charged. *Id.* The Court relied on the case of *Commonwealth v. Bracero*, 515 Pa. 355, 528 A.2d 936 (1987) and *Commonwealth v. Nash*, 457 Pa. 296, 324 A.2d 344 (1974), and found that, while the Defendant had shown that Butchy was unavailable, he did not show that the statement at issue was made under reliable circumstances. 12/5/12, v. 1, p. 196-199.

The admissibility of evidence is a matter solely within the discretion of the trial court and will be reversed only where a clear abuse of discretion occurs. *Commonwealth v. Foy*, 531 Pa. 322, 612 A.2d 1349 (1992). Under the Pennsylvania Rules of Evidence, statements against

---

[16] Initially, the court entered an Order on November 28, 2012 precluding at trial any statements made by A.C. For the sake of clarification, this Order precluded the testimony of A.C., Jr. or "Butchy." At the time this Order was entered this Court was unaware that this individual's father was . A.C.

[17] In the case *sub judice*, the Commonwealth argued the following:

> What I'm saying here is that there is no probative value. The fact that another person may have molested the victim does not make it less likely that this Defendant also molested this victim. There is a substantial prejudicial effect because this jury could be confused by starting to hear that there's another person that sexually assaulted this child. We've been through cases before where defense attorneys try to suggest that somebody else committed a crime. And they're permitted to do that in cases where there's one specific crime and it's either suspect A or suspect B. They're not permitted to do it in this case where there are multiple incidents involving this child and multiple people that could have committed some or all of them. And it's not either suspect A or B. It may well be both. It's our contention that certainly this Defendant, the defense may be able to make the jury believe it could be somebody else, too. That doesn't prove that this Defendant didn't do it. So that's not – this information is not, in any way, probative. But it is highly prejudicial in that it will substantially confuse the jury

N.T., 12/5/12, v.1, pp. 194-195.

15

interest are not excluded as hearsay if the declarant is unavailable as a witness. Pa.R.E. Rule.

804(b). A statement against interest is a statement that:

> (A) a reasonable person in the declarant's position would have made only if the person believed it to be true because, when made, it was so contrary to the declarant's proprietary or pecuniary interest or had so great a tendency to invalidate the declarant's claim against someone else or to expose the declarant to civil or criminal liability; and

> (B) is supported by corroborating circumstances that clearly indicate its trustworthiness, if it is offered in a criminal case as one that tends to expose the declarant to criminal liability.[18]

Pa.R.E., Rule 804(b) (3).

> A declarant is considered to be unavailable as a witness if the declarant:

> (1) is exempted from testifying about the subject matter of the declarant's statement because the court rules that a privilege applies; (2) refuses to testify about the subject matter despite a court order to do so; (3) testifies to not remembering the subject matter; (4) cannot be present or testify at the trial or hearing because of death or a then-existing infirmity, physical illness, or mental illness; or (5) is absent from the trial or hearing and the statement's proponent has not been able, by process or other reasonable means, to procure (A) the declarant's attendance, in the case of a hearsay exception under Rule 804(b)(1) or (6); or (B) the declarant's attendance or testimony, in the case of a hearsay exception under Rule 804(b)(2), (3), or (4).

Pa.R.E., Rule 804(a).

In order for a statement against interest to be admissible, considerable assurance of the reliability of such a declaration is required. *Bracero*, 515 Pa at 365, 528 A.2d at 940 (internal citation omitted). "[I]t is not rare for friends, peers and family members to go to extraordinary lengths to help an accused win an acquittal or avoid a jail sentence." *Id.* In the instant case,

A. C., Jr. or Butchy, could not be located to testify at trial. Defense counsel's case aide, Melissa Ellingsworth, testified that she had attempted to serve a subpoena to Butchy. N.T., 12/5/12, v. I, pp. 168-69. She explained that she had gone to his last known residence on

---

[18] This rule is identical to F.R.E. 804(b) (3).

16

December 3, 2012 and was told by an individual at that address that Butchy did not live there and that he did not know where Butchy lived. *Id.* at 171, 175. The individual refused to provide Ms. Ellingsworth with his name and abruptly closed the door. *Id.* Ms. Ellingsworth then approached the door of the residence for a second time, and was then greeted by a man who identified himself as 𝐴. 𝑊𝑖 who stated that he was Butchy's grandfather. *Id.* at 172-73. He explained that he owned the property and did not have a forwarding address or telephone number for Butchy. *Id.* Upon hearing this, this Court conceded that Butchy was in fact unavailable.

However, upon consideration of the testimony offered by N. K. , this Court was not convinced that Butchy's alleged statement was made under circumstances that provided a requisite assurance of reliability and trustworthiness. His statement was allegedly made after the conclusion of the Defendant's first trial, and he provided no details involving when or where he had allegedly molested S.P. Such a general statement that Butchy had "wanted to get something off his conscience [and] that he was the one that had been molesting S.P." was not reliable nor trustworthy.

In the alternative, this Court also found that the alleged confession was a collateral issue. N.T., 12/5/12, pp. 196-197. The Court relied on the Pennsylvania Superior Court's holding in *Commonwealth v. Holder,* 815 A.2d 1115 (Pa. Super. 2003) and the Pennsylvania Supreme Court's holding in *Commonwealth v. Johnson,* 536 Pa. 153, 638 A.2d 940 (1994). In *Johnson,* the Court held that testimony of an alleged prior sexual encounter between a victim and another was a collateral matter and thus inadmissible. *Johnson,* 638 A.2d 942-43.

The Court also relied upon *Commonwealth v. Smith.* 482 A.2d 1124 (Pa. Super. 1984). In *Smith,* the trial court refused to allow the defense to raise a prior altercation that the victim in the

17

case had been involved in by stating that [t]he prior incident was irrelevant to the charges against [the Defendant] and would have raised collateral issues serving only to distract the jurors from the relevant circumstances of the parties' conduct at times pertinent to the offense with which [the Defendant] had been charged." *Smith*, 482 A.2d at 1127. This Court saw this alleged confession by missing witness Butchy to be similarly collateral.

In the instant case, this Court found that the proposed testimony of Butchy would only show that the victim was possibly the victim of another sexual assault. As in *Holder*, the matter was collateral because an allegation that another individual had sexually abused the victim did not bear directly on whether or not the Defendant did also. *See Holder*, 815 A.2d at 1119. Accordingly, no relief is due.

## D. Four

The Defendant similarly claims that the court "erred in prohibiting the Defendant from presenting evidence or questioning the Commonwealth witnesses about the alleged sexual abuse of the victim by an alternate perpetrator, A.C.,Jr. (a/k/a Butchy), who was the step-brother of the alleged victim and who had made an admission that he had abused the victim." *See* Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), p. 1.

The Court respectfully submits that this claim is without merit, as this would only distract the jurors from the ultimate issue. The Court relies on the reasoning set forth in the preceding section.

## E. Five

Next, the Defendant asserts that the Court "erred by denying the Defendant's 6th Amendment right to present evidence on his behalf and his right to confrontation when the Court ruled that the Defendant could not make any reference to A.C.,Jr. (a/k/a Butchy) as

18

the alternative perpetrator at trial." *See* Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), p. 2.

The Confrontation Clause of the Sixth Amendment, applicable to the states through the due process clause of the Fourteenth Amendment, provides that in all criminal prosecutions, the accused shall enjoy the right to be confronted with the witnesses against him. *Commonwealth v. Robins*, 571 Pa. 248, 812 A.2d 514 (2002). In general, the Supreme Court has indicated that the Clause reflects a preference for face-to-face confrontation at trial, and that the primary interest protected is the right of cross-examination. *Id.*

In the instant case, the Defendant confronted his accusers and was represented by an able trial attorney who vigorously cross examined the Commonwealth's witnesses. It is respectfully submitted that there was no violation of the Confrontation Clause in this case.

Both the Pennsylvania and federal constitutions provide a criminal defendant with the right to compulsory process to obtain witnesses in his favor. *Commonwealth v. Lyons*, 833 A.2d 245, 253-54 (Pa. Super. 2003). This Court never denied the Defendant his right to compulsory process in this case. The Defendant complains that the Court would not allow him or N. K.

to testify about the contents of an alleged hearsay telephone conversation that allegedly occurred between N. K. and A. C., Jr. ("Butchy"). This Court never obstructed the Defendant's ability to subpoena Butchy for trial. To the contrary, the Court made every accommodation it could to defense counsel in their attempt to get Butchy to appear during the Defendant's trial. During the course of the Defendant's trial, defense counsel's process server went with a subpoena in hand to the address provided by the Defendant for Butchy only to be told that he no longer lived there and that there was no address that he could provide for him.

The substance of the Defendant's complaint is stated above. This Court would not allow

19

N. K.     to tell the jury the contents of an alleged telephone conversation that he had allegedly had with Butchy. Again, as stated above, the Court found that though Butchy was not available there were not sufficient corroborating circumstances that indicated the trustworthiness of the alleged statement. *See* Pa.R.E. Rule 804(3). It is interesting to note that the alleged substance of the alleged telephone call from Butchy was that Butchy "was bothered - - his conscience was bothering him and that he wanted to get it off his chest and he didn't know what to do. . . . [because he was] the one that was molesting S.P." N.T., 12/5/12, v. 1, p. 45. Nevertheless, after he supposedly said this to  N. K.   , Butchy never did anything concrete to help the Defendant—not the least of which, to stick around for the Defendant's second trial.

In the alternative and as set forth above, in the case *sub judice*, the Defendant sought to introduce collateral and irrelevant evidence intended to persuade the jury that Butchy had molested the minor victim himself. The problem with the Defendant's claim is that 1) S.P. said it was the Defendant who abused her, without any mention of Butchy, 2) the Defendant admitted committing these crimes and provided details, including details as to time and location, and 3) naked pictures of S.P. were located on the Defendant's computer. On the other hand, Butchy's alleged confession provided no details. It could very well be that Butchy too molested S.P. and he too was somehow responsible for the child pornography. However, this did not exculpate the Defendant. Because this evidence was not relevant to the crimes charged, this Court refused to permit the Defendant to cross examine anyone regarding this alleged confession. *See Commonwealth v. Holder*, 815 A.2d 1115, 1118–1119 (Pa. Super. 2003) (testimony that someone other than the defendant had abused the victim before the alleged incident with the defendant did not bear directly on her reputation for chastity and was not relevant to the

20

defendant's guilt or innocence). The Court respectfully submits that the Defendant's constitutional rights were not violated by this ruling. Accordingly, no relief is due.

## F. Sufficiency of the Evidence

Next, the Defendant raises several challenges to the sufficiency of the evidence. In evaluating a challenge to the sufficiency of the evidence, the reviewing court must determine whether, viewing the evidence in the light most favorable to the Commonwealth as verdict winner, together with all reasonable inferences therefrom, the trier of fact could have found that each and every element of the crimes charged was established beyond a reasonable doubt. *Commonwealth v. Lee*, 956 A.2d 1024, 1027 (Pa. Super. 2008) (internal citations and quotations omitted). Unless the evidence presented at trial is "so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances," the verdict should not be disturbed on appeal. *Id.* at 1027-28 (citing *Commonwealth v. Davis*, 799 A.2d 860, 866 (Pa. Super. 2002)).

### a. Child Pornography

First, the Defendant argues that the evidence was insufficient to convict the Defendant of child pornography, because "the Commonwealth was unable to prove beyond a reasonable doubt that Defendant was the culprit and that he intentionally or knowingly possessed such materials since there was testimony that multiple persons had access to the three computers confiscated from within the home where the Defendant resided." *See* Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), p. 2.

Following the trial, the Defendant was found guilty of five counts of possessing child pornography by photographing or depicting sexual acts on a computer, 18 Pa.C.S.A §6312(d)(1)

21

and five counts of possessing child pornography, 18 Pa.C.S.A §6312(d)(1). The Defendant appears to be challenging the latter charge.[19]

At trial, this Court instructed the jury, that in order to find the Defendant guilty of possessing child pornography by photographing or depicting sexual acts on a computer, they must find that each of the following elements had been proven beyond a reasonable doubt:

> First, that the Defendant knowingly photographed, depicted on a computer a child engaging in a prohibited sexual act or simulation of such an act. Second, that the child was at the time under the age of 18. For purposes of this trial, a prohibited act means nudity, if the nudity is depicted for the purposes of sexual simulation or gratification of any person who might view the photograph, video tape, computer depiction or film.

N.T., 12/6/13, p. 232.

At trial, this Court instructed the jury, that in order to find the Defendant guilty of possessing child pornography, they must find that each of the following four elements had been proven beyond a reasonable doubt:

> First, that the Defendant possessed, controlled, intentionally viewed a photograph or computer depiction. The term intentionally viewed means that the Defendant deliberately, purposely and voluntarily viewed material depicting a child under age 18 years of age, engaged in a prohibited sexual act or the simulation - - simulation of such an act. The term does not mean inadvertent or accidental viewing of such material. Second, that the item depicted a child engaging in a prohibited sexual act or the simulation of such act. Third, that the child was at the time under the age of 18. And fourth, that the Defendant did so knowingly. In other words, the Defendant was aware of what he possessed or controlled, the nature of its contents, and that the child involved was under the age of 18. The term depicted means, pictured or showed. For the purpose of this trial, a prohibited sexual act means nudity, if the nudity is depicted for the purpose of sexual stimulation or gratification of any person who might view the depiction.

N.T., 12/6/13, pp. 232-234.

Viewed in the light most favorable to the Commonwealth, the evidence supports that the Defendant was guilty of both possessing child pornography by photographing or depicting sexual

---

[19] Nonetheless, the Court addresses the sufficiency of the evidence for both charges.

acts on a computer and possession of child pornography. While the Defendant maintains that the evidence was insufficient because he presented evidence "that multiple persons had access to the three computers confiscated from within the home where [he] resided", it was well within the jury's province to determine which evidence to believe. *See Commonwealth v. Koehler*, 914 A.2d 427, 437 (Pa. Super. 2006) (totality of the circumstances presented at trial permitted the jury to infer defendant's ownership, use and ability to access the computer at aunt's home where pornography was recovered). The finder of fact, while passing upon the credibility of the witnesses and the weight of the evidence presented, is free to believe all, part, or none of the evidence. *Commonwealth v. Jones*, 886 A.2d 689, 704 (Pa. Super. 2005).

At trial, the Commonwealth established that the images of S.P. that were recovered from the Apple computer were taken with a Samsung cell phone and accessed by a Yahoo email account that bore the Defendant's user name. *See* N.T., 12/5/12, v. I., pp. 34-36. The Defendant lived in the basement of the house. N.T., 12/4/2012, p. 54.

The Commonwealth introduced evidence in which the Defendant readily admitted to detectives that he had taken photographs of his cousin, S.P., in the kitchen. *See* Commonwealth Exhibit C-9. The jury viewed these photographs at trial, and it was within their province to determine whether these photographs depicted child pornography. S.P. corroborated this evidence and testified that the Defendant took pictures of her in the kitchen with his cell phone. N.T., 12/3/12, p. 122. She testified that she was wearing her underwear and was told by the Defendant to pull her shirt up and pull her underwear down, and that she complied. *Id.* S.P. testified that Detective Clark asked her about these pictures when she went to the courthouse. *Id.* at 123. Looking at the evidence in a light most favorable to the Commonwealth as verdict winner, this Court believes that this evidence was sufficient to sustain his convictions for

23

possessing child pornography by photographing or depicting sexual acts on a computer.

The Commonwealth also introduced evidence in which the Defendant told detectives that he had downloaded LimeWire and viewed pornography on this computer. *See* Commonwealth Exhibit C-6. He used search terms such as "teen" and "girls." *Id.* The Commonwealth established that the Defendant had done so knowingly, as the Defendant told detectives that he used specific search terms and then clicked on files to download them. *Id.* He was aware that the files were kept in a video share folder and told detectives that there were approximately ten (10) images of child pornography on his computer. *Id.* Commonwealth and the defense stipulated at trial that all images found on the computers in this case depicted a child under the age of 18 engaging in a prohibited sexual act or simulation of such an act. *See* Commonwealth Exhibit C-27. Lastly, the Defendant acknowledged that an Apple computer had been used to download pornography and that he had the computer for about a year and a half. *See* Commonwealth Exhibit C-6. The Defendant resided in the basement. The Court submits that, viewing the evidence in a light most favorable to the Commonwealth as verdict winner, there was sufficient evidence to support the verdict of possession of child pornography.

### b. Criminal Use of a Communication Facility

The Defendant maintains that the evidence was insufficient for a jury to convict him of Criminal Use Communication Facility "since the Commonwealth was unable to prove beyond a reasonable doubt that this Defendant was the individual that used any of the computers that were confiscated in the commission of a felony or that the Defendant was the individual who owned, possessed or had access to the cell phone depicting the image of the victim." *See* Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), p. 2.

In order to sustain a conviction under 18 Pa.C.S.A. § 7512, the Commonwealth must

24

prove that the defendant (1) knowingly and intentionally used a communication facility; (2) knowingly, intentionally or recklessly facilitated an underlying felony; and (3) the underlying felony occurred. *Commonwealth v. Moss*, 852 A.2d 374, 382 (Pa. Super. 2004). In the case *sub judice*, the Defendant used his computer to download child pornography. Based upon the Commonwealth's evidence, the Defendant admitted to the detectives that he had downloaded LimeWire and had knowingly downloaded the files containing child pornography. It was up to the jury to determine which, if any, evidence to believe. The Court respectfully submits that the evidence was sufficient to sustain this conviction.

### c. Rape of a Child

Next, the Defendant argues that the evidence was insufficient to convict the Defendant on the charge of Rape of a Child, 18 Pa.C.S.A §3121(c), "since the Commonwealth was unable to prove beyond a reasonable doubt that a crime occurred on Thanksgiving 2009 since the victim did not testify that the incident occurred on that date and there was testimony that several persons were awake and present in the room throughout the night where the alleged incident had occurred." *See* Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), p. 2.

In the case *sub judice*, this Court instructed the jury of the following:

> [a] person commits rape of a child when the person engages in sexual intercourse with a child who is less than [] 13 years of age. Under our Crimes Code, such a rape can be committed by either a male or a female upon a child of the same or opposite sex. Sexual intercourse has a particular meaning in criminal law. Sexual intercourse occurs if a man's penetrates the female sexual organ or the mouth or anus of a person. Sexual intercourse also occurs is the tongue penetrates the female sexual organ. The slightest degree of penetration is sufficient, and no emission of semen is required for sexual intercourse to occur under criminal law. It is immaterial whether the child consented to the contact. Consent of the child is no defense. It is also no defense if the Defendant did not know the age of the child or the child lied about his or her age, or the Defendant honestly believed that the child was 13 or older, or the Defendant reasonably believed that the child was 13

25

or older.

N.T., 12/6/13, pp. 226-27. The testimony of the victim standing alone is sufficient proof upon which to find a defendant guilty of a sexual offense. *See* 18 Pa.C.S.A. § 3106; *see also* N.T., 12/6/12, p. 215.

Moreover, the Court also instructed the jury of the following:

[t]he informations filed in this alleges that the crime was committed on dates beginning in January of 2007, continuing through November of 2009. Now you are not bound by the dates -- date alleged in the informations filed. It is not an essential element of the crimes charged. You may find that defendant guilty if you are satisfied beyond a reasonable doubt that he committed the crimes charged on or about the date charged in the criminal informations, even though you are not satisfied that he committed it on the particular date alleged in the information.

N.T., 12/6/12, pp. 215-16.

In viewing the evidence in a light most favorable to the Commonwealth, this Court finds that sufficient evidence was presented for the jury to convict the Defendant of rape. At trial, evidence was presented that the Defendant admitted to penetrating the victim in this case. He told detectives that he "tried to have intercourse but it didn't work." *See* Commonwealth Exhibit C-9. He told the detectives that his penis "didn't go all the way in." *Id.* He told detectives that he attempted to have sex with S.P. three times. *Id.* He told the detectives that the last time that he had sex with S.P. was around Thanksgiving of 2009. *Id.* The Defendant told the detectives that he turned 18 years old prior to this incident, on November 16th. *Id.*

S.P. testified that when she was seven, eight and nine, she would go to her grandmother's home a lot. N.T., 12/3/12, pp. 112-13. She would sometimes spend the night, and sleep in the living room. *Id.* at 113. While S.P. couldn't remember exactly what age she was at the time, she did remember that there were times when she slept at her grandmother's house when the Defendant would wake her up and force her to pull her pants down. *Id.* at 115-17. She testified

26

that the Defendant would force her to put her mouth on his penis. *Id.* at 117. This happened on more than one occasion. *Id.* at 117-18. She testified that the Defendant put his penis in her vagina "just a little." *Id.* 118-19. She explained that it hurt. *Id.* at 120. She testified that this happened a couple of times in the living room. *Id.* at 121. She further explained that her brother was asleep in the living room when this occurred and her grandparents were upstairs. *Id.* at 120. She also testified that this occurred once in the basement. *Id.* at 121.

This Court finds that it was not determinative that there was testimony presented by the defense at trial that several persons were awake and present in the room throughout the night where the alleged incident had occurred. This Court submits that it was up to the jury to determine which testimony to believe. The Court respectfully submits that the evidence was sufficient to sustain the Defendant's conviction of rape.

### d. Statutory Sexual Assault

The Defendant argues that the evidence was insufficient to convict the Defendant on the charge of Statutory Sexual Assault "since the Commonwealth was unable to prove beyond a reasonable doubt that a crime occurred on Thanksgiving 2009 since the victim did not testify that the incident occurred on that date and there was testimony that several persons were awake and present in the room throughout the night where the alleged incident had occurred." *See* Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), p. 2.

At the outset, the Court restates that the date of the offense was not an element of the crime that was required to be proven beyond a reasonable doubt at trial. The Defendant maintains that the evidence was insufficient because the Commonwealth did not prove that the crime occurred on Thanksgiving of 2009. This assertion is belied by the record.

27

This Court cannot discern whether the Defendant complains that the Commonwealth failed to establish a specific date on which the crime of statutory sexual assault was committed.[20] Assuming he does, the Court addresses this issue herein. It is well settled that the date of the commission of the offense must be fixed with reasonable certainty. *Commonwealth v. Devlin,* 460 Pa. 508, 512, 333 A.2d 888, 890 (1975). The Rules of Criminal Procedure require that the information include the date when the offense is alleged to have been committed, if the precise date is known, and the day of the week if it is an essential element of the offense charged, provided that if the precise date is not known or if the offense is a continuing one, an allegation that it was committed on or about any date within the period fixed by the statute of limitations shall be sufficient. Pa.R.Crim.P. Rule 560(B) (3). *See also Commonwealth v. Brooks,* 7 A.2d 852 (Pa. Super. 2010) ("Case law has further 'established that the Commonwealth must be afforded broad latitude when attempting to fix the date of offenses which involve a continuous course of conduct.'") (internal citation omitted). Such was the case here.

In the case *sub judice,* the informations charging the Defendant with statutory sexual assault set forth the following: "The District Attorney of Delaware County by this Information charges that on (or about) diverse dates beginning in January 2007 and continuing through December 2009 in said County, the defendant Nathaniel A. Spady did engage with sexual intercourse with [S.P.]"

The Defendant was charged with committing sexual offenses against S.P. over the course of several years. At trial, S.P. testified that she was between the ages of 7 and 9 when this occurred. N.T. 12/3/12, pp. 112-13. While she could not pinpoint the exact dates, at trial, the

---

[20] A review of the record reveals that the Defendant did not raise this issue before or during trial. Accordingly, the Court submits that this issue is waived. *See* Pa.R.A.P. 302(a) ([i]ssues not raised in the lower court are waived and cannot be raised for the first time on appeal). Assuming *arguendo,* that the Defendant did preserve this claim, no relief is due.

28

Commonwealth introduced a statement provided *by the Defendant* in which he admitted to engaging in sexual activity with S.P. *See* Commonwealth Exhibit C-9. It was the Defendant himself who laid out the dates to the detectives and told them that the last time that this occurred was in Thanksgiving of 2009. *Id.* This Court finds that the Commonwealth established that the crime of statutory sexual assault occurred within the timeframe charged in the informations in this case.

At the conclusion of the Defendant's trial, the jury was correctly instructed as follows:

"To find the Defendant guilty of [statutory sexual assault], you must find the following four elements have been proven beyond a reasonable doubt:

First, that the Defendant had sexual intercourse with [S.P.];

Second, that [S.P.] was a child under the age of 16;

Third, that the Defendant was four or more years older than the child; and

Fourth, the Defendant and the child were not married to one another.

For the purposes of this crime, sexual intercourse has a special meaning. In a case like this where the parties are of the opposite sex, sexual intercourse includes not only ordinary intercourse but also oral or anal intercourse. There must be some penetration, however slight. In other words, the penetration may be partial and very brief. It is not necessary that the male emit any semen. Now as my statement of the elements indicate, it is immaterial whether the child consented to the intercourse. Consent of the child is no defense."

N.T., 12/6/13, pp. 227-28.

At trial, the Commonwealth proved each of these elements beyond a reasonable doubt. First, through the testimony of the victim, they established that the Defendant had sexual intercourse with her. She testified that he put his penis inside of her vagina "a little bit" and that he forced her to put her mouth on his penis. N.T. 12/3/12, pp. 116-19. Accordingly, the Commonwealth established penetration, however slight. The Commonwealth also established that the Defendant and the victim had engaged in oral sex. Second, the Commonwealth

29

established that the victim as under 16 years of age. She testified at trial that she was between the age of 7 and 9 when these incidents occurred. *Id.* at 112-13. Third, the Commonwealth established that the Defendant was at least four years older than the victim. The Defendant told the detectives that he was 14 or 15 when he first began to have sexual intercourse with S.P. *See* Commonwealth Exhibit C-9. He told the detectives that S.P. was maybe 8 or 9 years old at this time. *Id.* Lastly, it was established that the Defendant was the victim's cousin. They were not married to one another. Accordingly, this Court submits that the evidence was sufficient to convict the Defendant of statutory sexual assault.

### e. Involuntary Deviate Sexual Intercourse

Next, the Defendant argues that the evidence "was insufficient to convict the Defendant on the charge of Involuntary Deviate Sexual Intercourse with a Child since the Commonwealth was unable to prove beyond a reasonable doubt that the crime occurred on Thanksgiving 2009 since the victim did not testify that the incident occurred on that date and there was testimony that several persons were awake and present in the room throughout the night where the alleged incident had occurred." *See* Concise Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), p. 2.

Again, the Court submits that the Commonwealth was not required to prove the exact date of the incident beyond a reasonable doubt.[21] The Court submits that the evidence was sufficient to find the Defendant guilty of involuntary deviate sexual intercourse. A person commits involuntary deviate sexual intercourse with a child, a felony of the first degree, when the person engages in deviate sexual intercourse with a complainant who is less than 13 years of age. 18 Pa.C.S.A. § 3123(b).

---

[21] The Court has set forth its analysis on this issue in the preceding section. For the sake of brevity, it will not restate its analysis here.

[I]n order to sustain a conviction for involuntary deviate sexual intercourse, the Commonwealth must establish the perpetrator engaged in acts of oral or anal intercourse, which involved penetration however slight. In order to establish penetration, some oral contact is required. Moreover, a person can penetrate by use of the mouth or the tongue.

*Commonwealth v. Wilson*, 825 A.2d 710 (citing *Commonwealth v. L.N.*, 787 A.2d 1064, 1070 (Pa. Super. 2001) (internal citations omitted).

The jury was instructed as follows:

A person commits involuntary deviate sexual intercourse with a child when the person engages in deviate sexual intercourse with a child who is less than 13 years of age. Under our Crimes Code, such an offense can be committed by either a male or a female upon a child of the same or opposite sex. Deviate sexual intercourse has a particular meaning in criminal law. By deviate I do not mean to apply a value judgment either way. Deviate is a legal term that should not be confused with the word deviant, which is often has a negative connotation. Deviate sexual intercourse occurs if a man's penis penetrates the mouth or anus of a person, or if a person's tongue penetrates the sexual organ of a woman. Deviate sexual intercourse also occurs if a person uses a physical object not part of his or her body to penetrate the anus of another person or the sexual organ of a woman for any purposes other than a good faith medical, hygienic or law enforcement purposes. For all forms of deviate sexual intercourse the slightest degree of penetration is sufficient, and no emission of semen is required. It is immaterial whether the child consented to the contact. Consent of the child is no defense. It is also no defense if the child did not know – excuse me. It is also no defense if the Defendant did not know the age of the child, or the child lied about his or her age, or the Defendant honestly believed that the child was 13 years or older, or the Defendant reasonably believed that the child was 13 or older.

N.T., 12/6/12, pp. 228-229.

At the Defendant's trial, the victim, S.P. testified that the Defendant would pull her pants down and force her to perform oral sex on him. N.T., 12/3/13, pp. 118-119. The Defendant told the detectives that this occurred approximately six to seven times. *See* Commonwealth Exhibit C-9. The Defendant told detectives that S.P. would climb under the covers in his room in the basement. *Id.* He told detectives that he put his hand on the back of her head. *Id.* Viewed in a light most favorable to the Commonwealth, this conduct constituted oral intercourse and involved penetration however slight. This Court submits that the evidence was sufficient to

31

convict the Defendant of this crime.

### f. Indecent Assault

Lastly, the Defendant argues that the evidence was insufficient to convict the Defendant

on the charge of indecent assault "since the Commonwealth was unable to prove beyond a

reasonable doubt that a crime occurred on Thanksgiving 2009 since the victim did not testify that

the incident occurred on that date and there was testimony that several persons were awake and

present in the room throughout the night where the allege incident occurred." *See* Concise

Statement of Matters Complained of on Appeal Pursuant to Rule 1925(b), p. 3.

The Court submits that the evidence was sufficient to sustain the Defendant's conviction

for indecent assault.

> A person is guilty of indecent assault is the person has indecent contact with the complainant, causes the complainant to have indecent contact with the person or intentionally causes the complainant to come into contact with seminal fluid, urine or feces for the purpose of arousing sexual desire in the person or the complainant and the complainant is less than 13 years of age.

18 Pa.C.S.A. § 3126(7). The date of the crime is not an element of this offense.

In order to find the Defendant guilty of indecent assault of a child, the jury was required

to find that the following elements were proven beyond a reasonable doubt:

> First, that the Defendant had indecent contact with [S.P.], or caused [S.P] to have indecent contact with him. To prove that the Defendant had indecent contact with the alleged victim, or caused the alleged victim to have indecent contact with him, the Commonwealth must prove that the Defendant brought about a touching of the sexual or other intimate body of one of them by the other, and that the Defendant did so for the purpose of arousing or gratifying his own or the victim's sexual desires. Contact may be indecent even though the clothing of the Defendant or the victim prevents their flesh from touching.

> Now second, the second element is that [S.P.] was less than 13 years of age. Now it is no defense if the Defendant did not know the age of the child, or the child lied about his or her own age, or the Defendant honestly believed that the child was 13 or older, or the Defendant reasonably believed that the child was 13 or older. If you find that these elements have been proven beyond a reasonable doubt, you should find the Defendant

guilty.

N.T., 12/6/12, pp. 229-231.

In the case *sub judice*, the Defendant was found guilty of two counts of indecent assault. At trial, the Defendant admitted that S.P. had touched his penis for his own sexual gratification. He testified that this this occurred approximately six to seven times. *See* Commonwealth Exhibit C-9. Accordingly, the Commonwealth established that the Defendant caused S.P. to have indecent contact with him, satisfying the first element of the offense. The Commonwealth also established the second element of the offense that S.P. was less than 13 years of age when this occurred. The Defendant told the detectives that S.P. was between 7 and 9 years old when these events occurred. *See* Commonwealth Exhibit C-9. S.P. also testified at trial, and recalled that she was approximately seven, eight or nine when this occurred. N.T., 12/3/12, pp. 112-13. The Commonwealth established both of these elements beyond a reasonable doubt. The Court submits there was sufficient evidence to support the verdict of indecent assault.[22]

## G. Weight of the Evidence

Additionally, the Defendant challenges the weight of the evidence on the above crimes. A challenge to the weight of the evidence will only be reversed when "the lower court's verdict is so contrary to the evidence as to shock one's sense of justice." See *Commonwealth v. Cousar*, 593 Pa. 204, 223, 928 A.2d 1025, 1035 (2007); *Commonwealth v. Keaton*, 556 Pa. 442, 464, 729 A.2d 529, 540-41 (1999); *Commonwealth v. Barnhart*, 434 A.2d 191, 192 (Pa.Super. 1981).

It is well established that the weight of the evidence is exclusively for the finder of fact who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses. *Commonwealth v. Nahavandian*, 849 A.2d 1221, 1231 (Pa. Super. 2004);

---

[22] The Court again relies on its analysis in the preceding sections addressing the Defendant's complaint challenging the date of the offense.

33

*Commonwealth v. Hunter*, 768 A.2d 1136, 1142 (Pa. Super. 2001). The Court cannot substitute its judgment for that of the trier of fact. *Commonwealth v. Holley*, 945 A.2d 241, 246 (Pa. Super. 2008).

It is well established that a motion for a new trial alleging that the verdict was against the weight of the evidence is addressed to the discretion of the trial court. *Commonwealth v. Cousar*, 593 Pa. 204, 223, 928 A.2d 1025, 1035 (2007). The trial court will award a new trial only when the jury's verdict is so contrary to the evidence as to shock one's sense of justice. *Id.* On appeal, the reviewing court is to determine whether the trial judge's discretion was properly exercised, and relief will only be granted where the facts and inferences of record disclose a palpable abuse of discretion. *Id.*

Pennsylvania Rule of Criminal Procedure 607 states, in relevant part, that "[a] claim that the verdict was against the weight of the evidence shall be raised with the trial judge in a motion for a new trial" in a written or oral motion before the court prior to sentencing, or in a post-sentence motion. Pa.R.Crim.P. 607(a) (1)-(3). Moreover, the comment to the rule clearly establishes that "[t]he purpose of this rule is to make it clear that a challenge to the weight of the evidence must be raised with the trial judge or it will be waived." Pa.R.Crim.P. 607, comment. Failure to challenge the weight of the evidence presented at trial in an oral or written motion prior to sentencing or in a post-sentence motion will result in waiver of the claim. *Commonwealth v. Bond*, 604 Pa. 1, 985 A.2d 810, 820 (2009).

This Court's review of the record has failed to uncover a challenge to the weight of the evidence. Accordingly, the Court submits that the Defendant's claims related to the weight of the evidence are waived.

Bearing this in mind, assuming *arguendo* that the Defendant had preserved this claim, this Court submits that the jury's verdict was not so contrary to the evidence presented at trial as to shock one's sense of justice. The jury was free to believe the testimony of certain of the Commonwealth's witnesses and to disbelieve the testimony of others. *Commonwealth v. Griscavage,* 512 Pa. 540, 517 A.2d 1256 (1986). It is evident that the jury chose to believe the testimony of the Commonwealth's witnesses over those offered by the defense, namely, the Defendant himself. This Court does not believe the jury's verdict was shocking in this case. It is not for this Court to substitute its own judgment for that of the jury in the Defendant's case.

## CONCLUSION

In light of the aforementioned, it is respectfully submitted that the verdict is supported by the record and applicable legal authority, and that there is no merit to the Defendant's appeal. It is for the reasons set forth above that this court respectfully submits that his Judgment of Sentence be affirmed.

BY THE COURT:

GREGORY M. MALLON, JUDGE

FILED
2014 AUG 25 AM 11: 09
OFFICE OF JUDICIAL SUPPORT
DELAWARE CO. PA

35

APPENDIX A

# IN THE COURT OF COMMON PLEAS OF DELAWARE COUNTY, PENNSYLVANIA
## CRIMINAL DIVISION

**COMMONWEALTH OF PENNSYLVANIA**

**v.**

**NATHANIEL SPADY**

**NO. 1950-10**

**Michael Gallantino, Esquire, Attorney for the Commonwealth**
**Robert T. Datner, Esquire, Attorney for the Defendant**

## DECISION

Presently before the Court is Defendant's "Motion to Suppress Statements." Following an evidentiary hearing held on November 9, 2010, this Court publishes the following:

### I.    FINDINGS OF FACT

1.    A criminal complaint was filed against the Defendant, Nathaniel Spady, on December 19, 2009. The Defendant is charged with the crime of rape and related offenses.

2.    On November 9, 2010, Defendant, through counsel, filed a "Motion to Suppress Statements" in which he argued that the arrest of the Defendant was illegal, without probable cause, and without lawful warrant of arrest. Defendant also maintains that statements provided to detectives were not knowingly, intelligently, or voluntarily given and were obtained in violation of his rights under the United States Constitution and the laws and Constitution of the Commonwealth of Pennsylvania.

3.    This Court took testimony and heard argument on Defendant's motion on November 9, 2010. Detective Robin Clark and Lieutenant David Peifer, of the Criminal Investigation Division of Delaware County, testified at the hearing.

4. On the evening of December 18, 2009, the Defendant drove to the Criminal Investigation Division's office (hereinafter "CID"), to meet with Detective Clark. N.T., 11/9/10, pp. 11-12, 37.

5. Detective Clark had arranged the meeting with the Defendant following an interview that she had conducted with the alleged victim in this case several days prior. *Id.* at 35.

6. The Defendant arrived at the Delaware County courthouse, where CID is located, at approximately 5 P.M. *Id.* at 49. Because it was after business hours, the Defendant was met by Lieutenant Peifer, who let him into the building and to CID. *Id.* at 37-38; 64.

7. Detective Clark met the Defendant inside of CID. *Id.* at 37. CID is located in the basement of the Delaware County courthouse. *Id.* at 38-39. Upon entering CID, the Defendant was directed to a small conference room. *Id.* at 65. The room contains a large table and several chairs. *Id.* at 38. The room has no windows. *Id.* at 38-39.

8. Detective Clark, Lieutenant Peifer, and the Defendant were the only people present in the room. *Id.* at 39.

9. Detective Clark told the Defendant that he could sit wherever he wanted in the conference room. *Id.* at 42. The Defendant selected a chair on the opposite side of the table, across from Detective Clark and Lieutenant Peifer. *Id.*

10. Once they sat down, Detective Clark spoke to the Defendant about why he was there and advised him of allegations that had been made against him.

2

*Id.* at 12. Detective Clark asked the Defendant if he was willing to give an interview. *Id.* The Defendant agreed with this request. *Id.*

11.   Detective Clark explained that she then read through a form which she referred to as "a *Miranda* report." *Id.* at 12. The form was introduced by the Commonwealth at the suppression hearing and entitled "Criminal Investigation Division Procedure Before Questioning." *See* CW-Exhibit 1. Detective Clark explained that she read each question on the form and then asked the Defendant if he understood each question that she was asking. *Id.* at 14.

12.   Detective Clark first advised the Defendant that he had "the right to remain silent, [and that] anything you say can be used against you in a court of law." *Id.* at 14. The Defendant was asked if he understood this, and answered yes. *Id.* at 15. The Defendant then wrote his initials[1] next to the question on the form. *Id.* at 15. The Defendant was then advised that he had the right to talk to a lawyer before answering any questions and to have a lawyer present during questioning. *Id.* at 15-16. The Defendant responded that he understood this and he wrote his initials on the form. *Id.* at 16. Detective Clark then informed the Defendant that "if you could not afford a lawyer, you have a right to have a lawyer appointed for you free of charge for any questions you are asked and during any questioning." *Id.* at 16. The Defendant stated that he understood this, and initialed the form. *Id.* Detective Clark then advised the Defendant that he had the right to stop at

---

[1] The Defendant, who also goes by the name Devon Spady, wrote the initials "D.S." N.T., 11/7/10, p.15, 24.

3

any time and refuse to answer any questions. *Id.* at 16. The Defendant stated that he understood this, and initialed the form. *Id.* at 17.

13. Finally, Detective Clark asked the Defendant to read the following paragraph, which was also contained on the form: "I understand my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind have been used against me." *Id.* at 17; *See also* CW-Exhibit 1. The Defendant read this paragraph, signed it, and stated that he understood it. *Id.* at 12, 18. Detective Clark also signed the form. *Id.* at 18. The Defendant remained seated across from Detective Clark and Lieutenant Pfeiffer during this time. *Id.* at 14.

14. It was established that by this point, the Defendant had been in CID between thirty to forty minutes. *Id.* at 50. Detective Clark stated that she wrote the time, which was either 5:03 P.M. or 5:08 P.M., on the form down as soon as she and the Defendant sat down at the conference table in CID, before she read the Defendant his rights. *Id.* at 46-49.

15. Detective Clark then informed the Defendant that the interview would be recorded. *Id.* at 19. A tape recorder was placed in the middle of the table. *Id.* at 42. An audiotape of the interview on December 18, 2009 was played for the Court at the suppression hearing on November 9, 2010. At the commencement of the interview, a time of 5:48 P.M. was indicated.

4

16. Lieutenant Peifer remained in the room throughout the interview. *Id.* at 23. The interview, which ended at 6:08 P.M., lasted approximately a half an hour. *Id.* at 46-48.

17. Detective Clark testified that the Defendant was free to get up and leave whenever he wanted to, but stated that she did not explicitly advise him that he could do so. *Id.* at 52.[2] Lieutenant Peifer could not recall advising the Defendant that he was free to leave. *Id.* at 82.

18. The Defendant was not in handcuffs during the interview. *Id.* at 85.

19. There was nothing blocking the Defendant's exit from the conference room, and there was a door located behind him in the room. *Id.* at 40, 85.

20. During the interview, the Defendant made certain incriminating statements. *Id.* at 86. Specifically, the Defendant admitted that he had engaged in sexual activity with the alleged victim in the case. *Id.*

21. Following the interview, the Defendant was placed under arrest. *Id.* at 24, 86. The Defendant was thereafter charged with the aforementioned crimes.

22. At no point during the interview did the Defendant state that he wanted a lawyer. *Id.* at 86.

23. At no point during the interview did the Defendant state that he wanted to leave. *Id.* at 86.

24. The Defendant spent a total of approximately one hour in the CID office, from his arrival at 5:00 P.M. until the conclusion of the interview, which was at 6:08 P.M. *Id.* at 49.

---

[2] Detective Clark did, however, inform the Defendant that he could stop at any time and refuse to answer and further questions prior to commencing the interview. See N.T. 11/9/10, pp. 16-17. The Defendant indicated that he understood this. *Id.*

5

25.     This court found the testimony of Detective Clark and Lieutenant Peifer to be credible.

## II.     **CONCLUSIONS OF LAW**

### **Voluntariness of Defendant's Statements**

1.      As a preliminary manner, the Court must determine whether or not the Defendant was "in custody" so as to trigger his right to *Miranda* warnings when he was interviewed on December 18, 2010.

2.      A person is in custody for *Miranda*[3] purposes only when he "is physically denied his freedom of action in any significant way or is placed in a situation in which he reasonably believes that his freedom of action or movement is restricted by the interrogation." *Commonwealth v. Johnson*, 556 Pa. 216, 727 A.2d 1089, 1100 (1999).

3.      Police detentions become custodial when under the totality of the circumstances the conditions and/or duration of the detention become so coercive as to become the functional equivalent of arrest. *Commonwealth v. Busch*, 713 A.2d 97, 100 (Pa. Super. 1998).

4.      "Among the factors the court utilizes in determining, under the totality of the circumstances, whether the detention became so coercive as to constitute the functional equivalent of a formal arrest are: the basis for the detention; the duration; the location; whether the suspect was transferred against his will, how far, and why; whether restraints were used; the show, threat or use of force; and the methods of investigation used to confirm or dispel suspicions." *Busch*, 713 A.2d at 101.

---

[3] *Miranda v. Arizona*, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

6

5. In the instant case, the Defendant was under no obligation to drive to CID and speak to Detective Clark. When he arrived at the courthouse, where the office was located, the Defendant was not handcuffed or restrained in any way. The Defendant was told that he was free to sit wherever he wanted after he entered the room in which the interview was conducted, and there was a door located behind him in the room. The recorded interview lasted approximately a half an hour. There was no evidence presented at the hearing that the interview was conducted in any coercive or threatening manner.

6. Based upon the totality of the circumstances, including, the fact that the Defendant was not transported to CID against his will, but instead, voluntarily drove himself there; the fact that the Defendant agreed to answer questions and was told that he could stop at any time; and the duration of the interview, which was approximately a half an hour, and which was, in this Court's view, not an excessive period of time, all show that the conditions and duration of the interview on December 18, 2010 did not become so coercive as to amount to the functional equivalent of arrest.

7. Even if this Court were to find that the interview was in fact a custodial detention,[4] this Court finds that the Defendant, after being informed of his rights under *Miranda* by Detective Clark, knowingly and voluntarily waived them before the interview was conducted.

8. A confession obtained during a custodial interrogation is admissible where the accused's right to remain silent and right to counsel have been explained

and the accused has knowingly and voluntarily waived those rights. *Commonwealth v. D'Amato,* 514 Pa. 471, 526 A.2d 300 (1987).

9.  The test for determining voluntariness of a confession and whether an accused knowingly waived his or her rights looks to the totality of the circumstances surrounding the giving of the confession. *Commonwealth v. Freeman,* 573 Pa. 532, 827 A.2d 385, 410 (2003); *Commonwealth v. Edmiston,* 535 Pa. 210, 634 A.2d 1078 (1993), (overruled on other grounds). Some of the factors to be considered include: the duration and means of interrogation; the accused's physical and psychological state; the conditions attendant to the detention; the attitude exhibited by the police during the interrogation; and any and all other factors which may serve to drain one's powers of resistance to suggestion and coercion. *Edmiston,* 535 Pa. at 227-228, 634 A.2d at 1087.

10. In determining voluntariness, the question "is not whether the defendant would have confessed without interrogation, but whether the interrogation was so manipulative or coercive that it deprived the defendant of his ability to make a free and unconstrained decision to confess." *Commonwealth v. Nester,* 551 Pa. 157, 163, 709 A.2d 879, 882 (1998).

11. As indicated herein, the Defendant was fully apprised of, and expressly waived, his *Miranda* rights, including the right to counsel and the right to remain silent, *before* any substantive questioning by Detective Clark began. See *Commonwealth v. Jones,* 546 Pa. 161, 178-79, 683 A.2d 1181, 1189

---

[4] At the suppression hearing held in the instant matter, the Commonwealth agreed with the defense's position that the Defendant was in custody on December 18, 2009 when he was interviewed at CID. N.T., 11/9/20, pp. 6-7.

8

(1996) (fact that suspect was read *Miranda* rights immediately prior to making statement weighed in favor of finding voluntariness).

12.     Before the interview began, the Defendant answered the questions posed by Detective Clark that were contained in the form. The Defendant indicated that he understood his rights and was willing to waive them. He also read, signed and indicated that he understood the following: "I understand my rights and I understand what my rights are. I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind have been used against me." This Court finds that the Defendant was well aware that he had a right not to talk to the officers if he chose not to.

13.     Another factor that indicated the voluntariness of the Defendant's waiver was the fact that the Defendant voluntarily drove himself to the CID office. *See Edmiston,* 535 Pa. 210, 634 A.2d 1078 (1993) (defendant's decision to come voluntarily to police station for interview was factor evidencing lack of coercion). Other factors included the duration of the interview, which lasted approximately a half an hour, and, as stated above, was, in this Court's view, not an excessive amount of time; the fact that the Defendant was not handcuffed or restrained in any way; and the fact that Detective Clark and Lieutenant Pfeiffer did not threaten or coerce the Defendant at any point throughout the interview.

14. Based upon the totality of the circumstances, this Court finds that the Defendant's confession and waiver of his right to remain silent was knowing, intelligent and voluntary.

15. In conclusion, this Court finds that the Defendant was not subject to a custodial interrogation, and that, any coercive factors inherent in the stationhouse setting of the interview were more than offset by Detective Clark's administration of *Miranda* warnings and the Defendant's voluntary waiver of those rights.

### Arrest

1. The Defendant also challenges the legality of his arrest, which he claims was illegal, without probable cause, and without lawful warrant of arrest.

2. To be constitutionally valid, an arrest with or without a warrant must be based upon probable cause, but it is only the probability—not a prima facie showing—of criminal activity that is the standard of probable cause for a warrantless arrest. *Commonwealth v. Brown*, 627 A.2d 1217, 1219 (Pa. Super. 1993).

3. Whether probable cause exists is a highly fact-sensitive inquiry that must be based on the totality of the circumstances as viewed through the eyes of a prudent, reasonable, cautious police officer guided by experience and training. *Commonwealth v. Clark*, 558 Pa. 157, 164, 735 A.2d 1248, 1252 (1999). Under the totality of the circumstances test, probable cause exists where the facts and circumstances within the officer's knowledge are sufficient to warrant a person of reasonable caution in the belief that an offense has been or is being committed. *Id.*

4.    In the instant case, the Defendant was arrested without a warrant. However, the Defendant's arrest occurred after he provided incriminating statements to Detective Clark, in which he admitted to committing certain criminal acts. It was only after the interview had concluded that the Defendant was placed under arrest.

5.    This Court finds that the Defendant's statements provided Detective Clark and Lieutenant Peifer with sufficient information to believe that the Defendant had committed a crime, and in turn, gave them probable cause to arrest. *Commonwealth v. Edmiston*, 535 Pa. 210, 228, 634 A.2d 1078, 1087 (1993) (a voluntary confession by a defendant that he committed an offense establishes probable cause to arrest) (overruled on other grounds).

WHEREFORE, we enter the following:

11