¶ 55 The Commonwealth Court's reasoning in *Duquesne Light* is consistent with the principles of negligence and the purview of the jury that have been enunciated by this Court. *See Dible v. Vagley*, 417 Pa.Super. 302, 307, 612 A.2d 493, 495 (1992) ("binding instructions may not be given if there is a question of fact properly submissible to the jury"); *Dougherty v. Boyertown Times*, 377 Pa.Super. 462, 481, 547 A.2d 778, 787 (1988) ("Negligence is a question for the jury to determine upon proper instruction. The court should not remove the question from the jury unless the facts leave no room for doubt."). We hold, therefore, that the trial court did not abuse its discretion in refusing to give an instruction that Appellee Brown was negligent as a matter of law.

**COMMONWEALTH of Pennsylvania,**
**Appellee,**

v.

**L.N., Appellant.**

Superior Court of Pennsylvania.

Argued Jan. 25, 2001.

Filed Dec. 12, 2001.

Kingsley A. Jarvis, Norristown, for appellant.

Mary M. Killinger, Assistant District Attorney, Norristown, for Com., appellee.

Before: EAKIN, ORIE MELVIN and TAMILIA, JJ.

ORIE MELVIN, J.

¶ 1 The Appellant, L.N.,[1] appeals from the judgment of sentence entered following his conviction of involuntary deviate sexual intercourse (IDSI), aggravated indecent assault and corruption of minors.[2] On appeal, the Appellant challenges the admissibility of certain evidence, the sufficiency of the evidence and the discretionary aspects of sentencing. For the reasons that follow, we affirm.

¶ 2 The facts and procedural history may be summarized as follows. The Appellant is the uncle of the eight-year-old victim. In July of 1996, the Appellant went into the victim's bedroom, closed the door, and asked the victim to play "the lollipop game." The Appellant pulled the victim's pants and underwear to his ankles and told him to lie on the floor. The Appellant got on top of the victim in a pushup position and licked the victim's penis. The Appellant then rolled the victim on his side and put his finger deep inside the child's anus, causing the victim pain. Appellant told the boy not to tell anybody. The victim testified that similar behavior occurred on three or four other occasions. *See* N.T. Trial, 4/12/00, at 63–75.

¶ 3 On April 13, 2000, a jury convicted the Appellant of IDSI, aggravated indecent assault and corruption of minors. Prior to sentencing, the Commonwealth filed a notice of its intent to pursue manda-

---

1. Due to the fact that the Appellant is a relative of the minor/victim in this case, we have identified the Appellant by only his initials.

2. 18 Pa.C.S.A. § 3123(6), 18 Pa.C.S.A. § 3125(7), and 18 Pa.C.S.A. § 6301, respectively.

tory minimum sentences for the IDSI and aggravated indecent assault offenses pursuant to 42 Pa.C.S.A. § 9718. On June 6, 2000, the Appellant was sentenced to consecutive sentences of five (5) to fifteen (15) years' imprisonment for IDSI; three (3) to ten (10) years' imprisonment for aggravated indecent assault; and five (5) years' probation for corruption of minors. On June 16, 2000, the Appellant timely filed a motion to reconsider sentence which was subsequently denied. This appeal followed.

¶ 4 The Appellant essentially presents six questions for our review:

1. Whether the trial court erred in declining to suppress appellant's entire statement to the police.

2. Whether the trial court erred in refusing to exclude that part of appellant's statement in which he admitted to having been the victim of sexual abuse as a child because it would have been prejudicial to appellant and was not relevant.

3. Whether the trial court erred by excluding evidence of other incidents in which the victim was sexually assaulted by persons other than appellant.

4. Whether the evidence was sufficient to prove appellant guilty of involuntary deviate sexual intercourse.

5. Whether the trial court erred by considering the effect of the crime upon the victim without accounting for other factors that could have caused or contributed to the victim's emotional state after the crime.

6. Whether the trial court abused its discretion by imposing consecutive sentences for the charges of involuntary deviate sexual intercourse and aggravated indecent assault.

*See* Trial Court Opinion, 8/18/00, at 1–2; Appellant's brief, at 5–6.[3]

¶ 5 The Appellant first claims the trial court erred in refusing to suppress the statement he gave on February 3, 1999.

In an appeal from the denial of a motion to suppress[,] our role is to determine whether the record supports the suppression court's factual findings and the legitimacy of the inferences and legal conclusions drawn from those findings. In making this determination, we may consider only the evidence of the prosecution's witnesses and so much of the defense as, fairly read in the context of the record as a whole, remains uncontradicted. When the [evidence supports the factual findings of the suppression court], we may reverse only if there is an error in the legal conclusions drawn from those factual findings. As a reviewing court, we are therefore not bound by the legal conclusions of the suppression court and must reverse that court's determination if the conclusions are in error or the law is misapplied. *Commonwealth v. Turner,* 772 A.2d 970 (Pa.Super.2001) (quoting *Commonwealth v. Hayward,* 756 A.2d 23, 26 (Pa.Super.2000)) (citations omitted; alteration in original).

¶ 6 Appellant argues he was tricked into going to the police station; officers told him they wished to speak about some problems other ·members of his family were having. Therefore, the Appellant claims, even though he voluntarily went to the station, his statement was not voluntarily given.

¶ 7 The test for determining whether a statement is voluntary and whether a waiver of rights is valid is the totality of the circumstances. *See Com-*

---

**3.** We have renumbered and rephrased the Appellant's claims for purposes of our review.

monwealth v. Reiss, 440 Pa.Super. 151, 655 A.2d 163, 167 (1995) aff'd by an equally divided court, 543 Pa. 479, 672 A.2d 784 (1996). If deception is used by law enforcement,

> the deception must not pertain to the consent itself, in some sense it must be collateral to the content of the permission voluntarily granted. Thus, the accused must know what is being consented to, and if the police exceed the scope of that consent, then they have passed their limits of permissible deception. This is consistent with the line of cases which have held that if the accused does not understand what it was that was consented to, then the consent is invalid.

Id., at 166 (citing Commonwealth v. Haynes, 395 Pa.Super. 322, 577 A.2d 564, 572 (1990)).

¶ 8 The suppression court found the Appellant was advised of the real reason for the interrogation prior to waiving his rights. See Trial Court Order, 4/5/00, at ¶ 7. The suppression hearing transcript indicates the police advised the Appellant of their specific interest after they read and he signed the Miranda[4] warning card. The Appellant did not make any incriminating statements at that point; instead, he demanded a polygraph test. The test was administered, and the Appellant failed. When the police met with him to discuss the results of the test, the Appellant suddenly admitted sexual involvement with his nephew. He was given Miranda warnings again and signed another waiver card. On the card, in response to the question whether he wished to remain silent, the Appellant answered, "no." Then he gave the police the challenged statement.

¶ 9 "Problems other members of the family were having" encompasses sexual assaults on the victim, but whether tactful or deceitful, any misapprehension that led the Appellant to the station is irrelevant. His statement was made after he was advised of the specific interest of the police and twice warned of his rights. The Appellant was not in custody and was free to leave the police station. He was coherent and alert. He never requested an attorney or indicated he did not wish to answer the officers' questions. Under the totality of the circumstances, we conclude the Appellant's statement was voluntarily given.

■ ¶ 10 In issues two and three, the Appellant alleges the trial court erred in admitting a portion of his statement indicating he had been sexually abused as a child, and in refusing to admit evidence of other instances in which the victim had been sexually assaulted by individuals other than the Appellant.

■ ¶ 11 Questions concerning the admissibility of evidence are within the sound discretion of the trial court, and we will not reverse the court's decision absent a clear abuse of discretion. Commonwealth v. Chmiel, 558 Pa. 478, 493, 738 A.2d 406, 414 (1999), cert. denied, 528 U.S. 1131, 120 S.Ct. 970, 145 L.Ed.2d 841 (2000). Rule 401 of the Pennsylvania Rules of Evidence states, " '[r]elevant evidence' means any evidence having any tendency to make the existence of any fact that is of consequence to the determination of the action more probable or less probable than it would be without the evidence." Pa.R.E. 401, 42 Pa.C.S.A. Rule 403 states, "[a]lthough relevant, evidence may be excluded if its probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury, or by considerations of undue delay, waste of time, or needless presentation of cumulative evidence." Pa.R.E. 403, 42 Pa.C.S.A.

¶ 12 The trial court ruled that the portion of the statement dealing with prior

---

4. Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966).

abuse of the Appellant "goes into the background and is relevant from the standpoint of [the Appellant's] experiences." N.T. Trial, 4/12/00, at 91. As the prosecutor pointed out, "[I]t's part of his confession.... [I]t's an explanation for his behavior that the defendant offered...." *Id.*, at 90. That his excuse on the night of the confession differs from his strategy at trial does not make the proffered excuse any less admissible. Had he claimed insanity or intoxication, the result would be the same. We perceive no abuse of discretion by the trial court in admitting this evidence.

¶ 13 The trial court also excluded evidence which would purportedly show the victim had previously claimed he was sexually assaulted by persons other than the Appellant. The Rape Shield Law [5] does not always preclude evidence the complainant was a victim of a prior sexual assault, *see Commonwealth v. Johnson,* 536 Pa. 153, 158, 638 A.2d 940, 942 (1994), but the proffered evidence must still be relevant and material under the rules of evidence. *Id.* Thus, the question is whether allegations of complaints against other persons are relevant to the issue at hand: whether the Appellant sexually abused the victim.

¶ 14 We conclude, as did the trial court, that this evidence is not relevant. In the Appellant's motion *in limine,* he asserted this evidence would indicate the victim was trying to please his parents by following their suggestions that he accuse the Appellant. Evidence of fabrication would of course be relevant, but it is hard to see how prior abuse allegations would comprise such evidence or make this a logical inference. The Appellant offered no evidence that the parents prompted the complaint or that the victim fabricated the complaint to please them. The proffered evidence had no other probative value. As

it did not tend to prove or disprove whether the Appellant abused the victim, the trial court properly refused to admit this evidence.

¶ 15 Appellant next claims the evidence is insufficient to support his IDSI conviction, because licking the victim's penis did not constitute penetration. The Appellant argues that because some part of the body of the perpetrator or victim must be penetrated in order to constitute IDSI, penetration by merely licking the genitalia of a young boy is not anatomically viable. We disagree.

¶ 16 The crime of IDSI is defined in Chapter 31 of the Pennsylvania Crimes Code as follows:

§ 3123. **Involuntary deviate sexual intercourse**

**Offense defined.**—A person commits a felony of the first degree when he or she engages in deviate sexual intercourse with a complainant:

* * *

(6) who is less than 13 years of age;

18 Pa.C.S.A. § 3123. Section 3101 defines the terms deviate sexual intercourse and sexual intercourse as follows:

**"Deviate sexual intercourse."** Sexual intercourse per os [oral] or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures

**"Sexual intercourse."** In addition to its ordinary meaning, includes intercourse per os or per anus, with some

5. 18 Pa.C.S. § 3104(a).

penetration however slight; emission is not required.

18 Pa.C.S.A. § 3101.

■■ ¶ 17 Therefore, in order to sustain a conviction for involuntary deviate sexual intercourse, the Commonwealth must establish the perpetrator engaged in acts of oral or anal intercourse, which involved penetration however slight. *Commonwealth v. Poindexter*, 435 Pa.Super. 509, 646 A.2d 1211, 1215 (1994), *appeal denied*, 540 Pa. 580, 655 A.2d 512 (1995). In order to establish penetration, some oral contact is required. *See Commonwealth v. Trimble*, 419 Pa.Super. 108, 615 A.2d 48 (1992) (finding actual penetration of the vagina is not necessary; some form of oral contact with the genitalia is all that is required). Moreover, a person can penetrate by use of the mouth or the tongue. *See In the Interest of J.R.*, 436 Pa.Super. 416, 648 A.2d 28 (1994), *appeal denied*, 540 Pa. 584, 655 A.2d 515 (1995) (stating "Deviate sexual intercourse is considered to have occurred if one's mouth or tongue penetrates the vaginal area of another").

¶ 18 There is no dispute here that the acts performed upon the victim constitute oral intercourse. Specifically, we find the oral contact between the Appellant's tongue with the victim's penis met the penetration requirement.

¶ 19 In *Commonwealth v. McIlvaine*, 385 Pa.Super. 38, 560 A.2d 155 (1989), *reversed on other* grounds, 529 Pa. 381, 603 A.2d 1021 (1992), a panel of this Court addressed an issue similar to the case at bar regarding the penetration requirement for involuntary deviate sexual intercourse. In *McIlvaine*, the victim testified "the appellant opened his pants, request that she kiss his penis, dropped his pants, got mad and then pushed her head down until she kissed his penis." *Id.* at 159. Based upon this testimony, the *McIlvaine* court determined the testimony was sufficiently descriptive to warrant the inference by the jury that the appellant penetrated, "however, slight," the mouth of the victim. *Id.*

■■ ¶ 20 Although the roles of the Appellant and the victim are reversed here, the outcome should not differ.[6] In the present case, the victim testified the Appellant pulled the victim's pants and underwear to his ankles and made him lie down on the floor. The Appellant then got on top of the victim and licked his penis. Based upon our review, we find the evidence sufficiently established penetration, "however slight," when the Appellant's tongue made contact with the victim's penis.

¶ 21 Moreover, any other interpretation would strip the IDSI statute of its overriding meaning as logic, common understanding and unquestionably legislative intent would have it applied. The meaning ascribed to sexual contact by os (mouth) can only be ignored if the tongue used in licking is not construed to be an internal part of the mouth, and is not construed to be oral sex in its most specific aspect. The term "mouth" is defined as the cavity "bounded **externally** by the lips and **internally** by the pharynx that encloses in a typical vertebrate the **tongue,** gums and teeth." Webster's Medical Desk Dictionary (1986); Webster's Tenth New Collegiate Dictionary (1993) (Emphasis added) To follow explicitly the requirement of penetration in permitting penetration to be lip contact (a kiss) with the sexual organ of another person, the lip being the **external** part of the mouth, while not permitting tongue contact with the sexual organ of another person, when the tongue is an

---

6. We recognize involuntary deviate sexual intercourse may involve the penetration of the body of the victim or that of the perpetrator.

*See Commonwealth v. Bruner*, 364 Pa.Super. 156, 527 A.2d 575 (1987), *appeal denied*, 517 Pa. 614, 538 A.2d 497 (1988).

internal part of the mouth, rises to the level of speciousness. Penetration as used in the statute is to assure explicit and indisputable contact between sexual organs and/or the mouth or anus of the parties. As intended by its meaning from time immemorial, any involuntary contact by the mouth, including the tongue as well as the lips, must meet the test of involuntary deviate sexual intercourse when used in the manner described here.

■ ¶ 22 In the Appellant's remaining issues on appeal, the Appellant essentially claims the sentencing court failed to properly articulate reasons for imposing consecutive sentences on the IDSI and aggravated indecent assault convictions other than the effect the offenses had upon the victim. *See* Appellant's brief at 23.[7]

■ ¶ 23 It is well settled that an appellant does not have an appeal as of right from the discretionary aspects of his sentence. 42 Pa.C.S.A. § 9781(b); *Commonwealth v. Adams*, 760 A.2d 33, 39, (Pa.Super.2000). Before a challenge to the judgment of sentence will be heard on the merits, an appellant must demonstrate there is a substantial question that the sentence imposed is inappropriate under the sentencing guidelines. *Commonwealth v. Rodriquez*, 449 Pa.Super. 319, 673 A.2d 962, 968 (1996), *appeal denied*, 547 Pa. 754, 692 A.2d 565 (1997). A substantial question will be found where appellant advances a colorable argument that the trial court's actions were inconsistent with a specific provision of the sentencing code, or contrary to the fundamental norms underlying the sentencing process. *Commonwealth v. Wagner*, 702 A.2d 1084, 1085 (Pa.Super.1997). To satisfy this requirement, an appellant must set forth in his brief a concise statement of reasons relied upon for allowance of

appeal with respect to the discretionary aspects of a sentence. Pa.R.A.P. 2119(f); *Commonwealth v. Tuladziecki*, 513 Pa. 508, 513, 522 A.2d 17 (1987). Here, the Appellant has attempted to conform to Rule 2119(f) and *Tuladzieki*. *See* Appellant's brief at 11.

■ ¶ 24 We recognize the imposition of a consecutive sentence does not present a substantial question regarding the discretionary aspects of sentencing. *Commonwealth v. Hoag*, 445 Pa.Super. 455, 665 A.2d 1212, 1214 (1995); *Commonwealth v. Wellor*, 731 A.2d 152 (Pa.Super.1999). However, the claim that a sentencing court has failed to state adequate reasons on the record for the sentence imposed has been held to present a substantial question. *Commonwealth v. Thomas*, 370 Pa.Super. 544, 537 A.2d 9, 12 (1988); *See also Commonwealth v. Lawson*, 437 Pa.Super. 521, 650 A.2d 876 (1994), *appeal denied*, 540 Pa. 596, 655 A.2d 985 (1995) (finding substantial question exists upon challenge that sentencing court failed to articulate its reasons for imposing consecutive sentences).

■ ¶ 25 When imposing a sentence, a court is required to consider "the particular circumstances of the offense and the character of the defendant." *Commonwealth v. Frazier*, 347 Pa.Super. 64, 500 A.2d 158, 159 (1985). The sentencing court is required to state its reasons for the sentence on the record, so that a reviewing court can determine whether the sentence imposed was based upon accurate, sufficient and proper information. *Commonwealth v. Sanders*, 426 Pa.Super. 362, 627 A.2d 183, 188 (1993), *appeal denied*, 535 Pa. 657, 634 A.2d 220 (1993). Where the sentencing judge had the benefit of a pre-sentence report, it will be presumed that he was aware of relevant information regarding appellant's charac-

---

7. Although these issues were separately presented in the Appellant's statement of questions, the Appellant addresses these issues together in the argument section of his brief.

ter and weighed those considerations along with the mitigating statutory factors. *Commonwealth v. Devers*, 519 Pa. 88, 101–102, 546 A.2d 12, 18 (1988).

¶ 26 Our review of the sentencing transcript reveals that the sentencing court considered the Sentencing Guidelines and the pre-sentence report. The court also considered the emotional impact the Appellant's crimes had upon the minor victim, the fact the Appellant was the victim's uncle, and the effect these crimes had upon the victim's entire family. In addition the sentencing court also referenced the Appellant's work history, lack of a prior criminal record, and the fact he was himself a victim of child abuse. Taking all of this information into consideration, the court imposed consecutive sentences. Our review of the record reveals the sentencing court properly weighed all of the relevant factors and provided adequate reasons on the record in sentencing the Appellant. Therefore, we find no reason to conclude the sentencing court abused its discretion.[8]

¶ 27 Furthermore, we recognize the sentences for IDSI and aggravated indecent assault were imposed pursuant to the mandatory minimum provisions set forth in 42 Pa.C.S.A. § 9718. In addition, the sentences were within the standard range of the Sentencing Guidelines and did not exceed the statutory limits. *See* 18 Pa.C.S.A. § 1103.

¶ 28 Accordingly, for the foregoing reasons, we affirm the judgment of sentence.

¶ 29 Judgment of sentence affirmed.

---

**8.** We recognize the Appellant claims the sentencing court failed to consider whether the victim's emotional problems could have been caused by other persons who had committed acts of abuse against the victim. However, in its Opinion, the trial court stated, "it understood that some of the victim's emotional problems could have been caused by persons other than the defendant." Trial Court Opinion, 8/18/00 at 5. Accordingly, the Appellant's claim is meritless.