J-S56023-19

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN JESSUP | : | |
| | : | |
| Appellant | : | No. 2746 EDA 2018 |

Appeal from the Judgment of Sentence Entered April 13, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008578-2015

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA | : | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| | : | |
| | : | |
| v. | : | |
| | : | |
| | : | |
| SHAWN JESSUP | : | |
| | : | |
| Appellant | : | No. 2747 EDA 2018 |

Appeal from the Judgment of Sentence Entered April 13, 2018
In the Court of Common Pleas of Philadelphia County Criminal Division at
No(s):  CP-51-CR-0008579-2015

BEFORE:  PANELLA, P.J., OLSON, J., and NICHOLS, J.

MEMORANDUM BY OLSON, J.:                    **FILED DECEMBER 20, 2019**

Appellant, Shawn Jessup, appeals from the judgment of sentence entered on April 13, 2018, as made final by the denial of a post-sentence motion on August 9, 2018, following his jury trial convictions of multiple

crimes arising from the sexual abuse of two juvenile females, O.V. and Y.V.[1]

At Docket Number CP-51-CR-0008578-2015, the jury found Appellant guilty

of rape of a child,[2] involuntary deviate sexual intercourse ("IDSI") with a

child,[3] and unlawful contact with a minor.[4]     At Docket Number

CP-51-CR-008579-2015, the jury found Appellant guilty of corruption of

minors[5] and indecent assault of a person less than 13-years-old.[6]  We affirm.

The trial court accurately summarized the factual background of this

case as follows:

> Beginning around [September 2013], the two female victim's
> moved with their four siblings and mother ("Tanya") into their
> maternal aunt's ("Aunt Melanie") house.  Aunt Melanie resided in
> [Philadelphia, Pennsylvania] along with [Appellant] and her four
> children.  The house had three bedrooms.  The ten children slept
> in the back room, Tanya stayed in the middle room, and Aunt
> Melanie shared the front room with [Appellant].
>
> On one occasion, the [entire household] went to the park[, except
> for O.V. and Appellant, who remained at the residence].  As [O.V.]
> left the back room to walk downstairs, [Appellant] came out of the
> bedroom he shared with Aunt Melanie.  He grabbed [O.V. by the
> hand] and brought her into the bedroom.   [Appellant] pinned

_____

[1] In its opinion, the trial court referred to the victims as "older victim" and "younger victim."  **See** Trial Court Opinion, 2/4/19, at 1-18.  On appeal, we will refer to "older victim" as O.V. and "younger victim" as Y.V.

[2] 18 Pa.C.S.A. § 3121(c).

[3] 18 Pa.C.S.A. § 3123(b).

[4] 18 Pa.C.S.A. § 6318(a)(1).

[5] 18 Pa.C.S.A. § 6301(a)(1)(i).

[6] 18 Pa.C.S.A. § 3126(a)(7).

[O.V.] down on the bed. [Appellant] pulled her underwear down to her knees and penetrated her vagina with his penis. [O.V.] told [Appellant] it hurt. [Appellant] then placed his mouth on her vagina. After the assault, [O.V.] went to the bathroom and noticed that she was bleeding. She left the house and went to the park.

Another incident took place downstairs at Aunt Melanie's house when the rest of the family was upstairs. [O.V.] was cooking noodles in the kitchen, while [Appellant] sat in a chair nearby. [Appellant] walked over to [O.V.], kissed her on the mouth, and touched her vagina over her clothing. He then moved his hand underneath her clothing and placed his fingers inside her vagina.

The next encounter [between Appellant and O.V.] occurred inside of a car belonging to [O.V.'s] uncle. The car was crowded and [Appellant] sat beside [O.V.]. He rubbed her lower thigh until she moved her cousin onto the side of her lap to prevent further contact.

On another occasion, [O.V.] was asleep in the back bedroom that she shared with the other children. She awoke to [Appellant] rubbing her buttocks over her clothing. [O.V. then] got up and went to the bathroom.

The final incident involved [Y.V.]. In the back bedroom, the ten children typically slept in the same place every night. On one night, however, [O.V.] went to sleep in [Y.V.'s] place. When [Appellant] entered the bedroom that night, he went to the location where [O.V. usually] slept – now occupied by [Y.V.] – and began rubbing her buttocks over her clothing. [Y.V.] awoke and ran to Tanya's room crying. [Appellant] followed behind her. [Y.V.] told Tanya that [Appellant] touched her buttocks. Tanya pushed [Appellant] until Aunt Melanie came out of her bedroom and separated them. Several months later, Aunt Melanie kicked [Tanya] and six children out of the house.

Near the end of the school year, Tanya was notified that her daughter, [O.V.], was not in school. Tanya confronted [O.V.] about whether she [] skipped school to spend time with boys. At this point, [O.V.] disclosed the abuse. Tanya brought her to Temple Hospital to be examined. Both victims were also evaluated at St. Christopher's Hospital. On June 26, 2015, the victims were interviewed by Philadelphia Children's Alliance.

Trial Court Opinion, 2/4/19, at 1-3.

Prior to Appellant's first trial, defense counsel made an oral motion in *limine*. N.T. Trial (Jury) Volume 1, 4/11/17, at 4-14. Appellant sought to cross-examine both O.V. and Y.V. concerning the fact that, in 2013, O.V. accused her stepfather, M.S., of molestation. *Id*. at 5. During that incident, O.V. claimed that M.S. touched her chest through her clothing and attempted to remove her pants. *Id*. at 19. Appellant argued that evidence of the prior 2013 assault, together with O.V.'s prompt complaint to her mother, was relevant to the current case. *Id*. at 4-14. In particular, Appellant claimed that this evidence could "inform[] how [Y.V.] approached the situation," *i.e.*, why she "assumed" Appellant assaulted her. *Id*. at 5. Additionally, Appellant argued that such evidence demonstrated O.V.'s resilient personality and also, could impeach her credibility. *Id*. at 6-7. On April 12, 2017, the trial court denied Appellant's motion in *limine* to admit evidence of the prior assault, finding that "its probative value [was] outweighed by the danger of unfair prejudice, confusion of the issues, and misleading the jury." N.T. Trial (Jury) Volume 1, 4/12/17, at 5.

Appellant's trial commenced on April 12, 2017 but, following a jury deadlock, the trial court declared a mistrial. On January 23, 2018, Appellant's re-trial began and on January 25, 2018, the jury found Appellant guilty of the aforementioned crimes. Trial Court Opinion, 2/4/19, at 1. On April 23, 2018,

Appellant filed various post-sentence motions, which the trial court denied on August 9, 2018. *Id.* at 4. This timely appeal followed.[7]

Appellant raises the following issue on appeal:[8]

Did the [trial] court err in denying Appellant's pre-trial motion in *limine* in which he sought permission to cross[-]examine [the] complaining witness as to why she promptly disclosed a prior sexual assault suffered at the hands of her stepfather in Georgia, but waited to disclose the instant allegations again[st] Appellant until at least one year later[?][9]

Appellant's Brief at 2.

_____

[7] Appellant filed two notices of appeal on September 6, 2018, separately listing each docket number. *See Commonwealth v. Walker*, 185 A.3d 969, 977 (Pa. 2018). On September 17, 2018, the trial court ordered Appellant to file a concise statement of errors complained of on appeal pursuant to Pa.R.A.P. 1925(b). Appellant timely complied. The trial court issued an opinion pursuant to Pa.R.A.P. 1925(a) on February 4, 2019.

[8] Appellant made his oral motion in *limine* before his first trial on April 11, 2017. *See* N.T. Trial (Jury) Volume 1, 4/11/17, at 4-14. That motion raised the issue Appellant now seeks to challenge on appeal. Although Appellant initially raised his evidentiary issue prior to his first trial, he renewed the motion on January 23, 2018. Specifically, Appellant presented "four motions in *limine*" and then indicated that he "assume[d]" that the trial court would continue its "pre[-]trial ruling from the last trial." *See* N.T. Trial (Jury) Volume I, 1/23/18, at 4. The court answered in the affirmative. *Id.* Herein, the Commonwealth does not dispute that the issue was preserved for appeal. Therefore, we will consider the merits of the present appeal.

[9] Appellant's question presented focuses on the trial court's denial of his motion in *limine* with regard to O.V. Appellant, however, argued in his oral motion and his appellate brief that the trial court erred because it barred cross-examination of Y.V., as well. *See* N.T. Trial (Jury) Volume 1, 4/11/17, at 5; Appellant's Brief at 9 and 12. Thus, we will address Appellant's allegation of error for both witnesses.

We have explained:

Our standard of review over evidentiary rulings requires us to determine whether the trial court abused its discretion. An abuse of discretion may not be found merely because an appellate court might have reached a different conclusion, but requires a result of manifest unreasonableness, or partiality, prejudice, bias, or ill-will, or such lack of support so as to be clearly erroneous.

***Commonwealth v. Henkel***, 938 A.2d 433, 440 (Pa. Super. 2007) (internal citations omitted).

Appellant argues that the trial court erred in denying his pre-trial motion in *limine* to permit the cross-examination of both O.V. and Y.V. about O.V.'s prior assault and her subsequent prompt complaint to her mother. Appellant's Brief at 9. Appellant contends that such evidence was relevant to the present case. ***Id.*** We disagree.

To be admissible, "proffered evidence [must] be relevant and material under the rules of evidence." ***Commonwealth v. L.N.***, 787 A.2d 1064, 1069 (Pa. Super. 2001).[10] Pennsylvania Rule of Evidence 401 defines relevant evidence as that which "has any tendency to make a fact more or less probable than it would be without the evidence [and] the fact is of consequence in determining the action." Pa.R.E. 401. Nonetheless, even if evidence is relevant, it may still be excluded if its "probative value is outweighed by the danger of unfair prejudice, confusion of the issues, or misleading the jury."

_____

[10] Both parties agree that the Rape Shield Law does not apply to the present case. ***See*** Appellant's Brief at 11; Commonwealth's Brief at 9; ***see also Commonwealth v. Johnson***, 638 A.2d 940, 942 (Pa. 1994).

- 6 -

Pa.R.E. 403; *see also Commonwealth v. Wall*, 606 A.2d 449, 457 (Pa. Super. 1992) (emphasis omitted) (explaining that the trial judge has "wide latitude" to "limit reasonably a criminal defendant's right to cross-examine a witness 'based on concerns about, among other things, harassment, prejudice, confusion of the issues, the witness' safety, or interrogation that is repetitive or only marginally relevant'").

Herein, Appellant first contends that the trial court erred in preventing him from cross-examining Y.V. about O.V.'s prior assault. Appellant's Brief at 9. He argues that such evidence was relevant "to show [why Y.V.] mistakenly interpreted innocuous acts as mischievous." *Id.* at 12. The trial court concluded that evidence of O.V.'s previous sexual abuse "is not relevant to whether [Y.V.] was sexually abused by [Appellant] several months later" because it "does not tend to prove or disprove whether the sexual assault occurred." Trial Court Opinion, 2/4/19, at 5. We perceive no abuse of discretion by the trial court in prohibiting the introduction of such evidence during Appellant's cross-examination of Y.V.

Next, Appellant argues that the trial court erred in barring cross-examination of O.V. about her delay in reporting the sexual abuse in this case, as compared to the prompt report she made regarding an incident involving her stepfather. Appellant's Brief at 9. Appellant argues that such evidence is relevant to show O.V.'s "personality as someone who has the tenacity to confront her abuser directly, and not simply wilt under the abuser's authority." *Id.* We disagree. Evidence of O.V.'s personality does not "tend

to prove or disprove whether Appellant abused her." *L.N.*, 787 A.2d at 1069. In addition, Appellant argues that evidence that O.V. made a prompt complaint previously, but failed to do so in the current case, is relevant for impeachment purposes. *Id.* at 8. Appellant claims that this evidence "goes directly to [her] credibility." *Id.* Appellant, however, disregards the fact that "the credibility of a witness may be impeached by any evidence **relevant** to that issue." Pa.R.E. 607(b) (emphasis added). Upon review, we conclude that O.V.'s previous complaint of a third party's significantly less severe sexual abuse is immaterial to whether or not Appellant, himself, sexually abused her.

Furthermore, we conclude that, even if relevant, evidence of O.V.'s prior prompt complaint is subject to exclusion under Pa.R.E. 403. In his brief, Appellant states that, if evidence of O.V.'s prompt complaint were introduced, the jury "would likely wonder why [O.V.] made a prompt complaint against her stepfather" but "waited to make her allegation against Appellant until she was backed into a corner by her mother." Appellant's Brief at 9. Notably, this precise inquiry demonstrates why the evidence is inadmissible under Rule 403. Indeed, if the trial court admitted the evidence of the prior prompt complaint, it could cause the jury to find that the present assault did not occur simply because O.V. failed to disclose Appellant's abuse as instantaneously as she did her stepfather's. *See Commonwealth v. Serge*, 837 A.2d 1255, 1261 (Pa. Super. 2003) (explaining that evidence is unfairly prejudicial if it causes the jury to "make a decision based upon something other than the legal propositions relevant to the case"). Thus, we conclude that the trial court did

not abuse its discretion by prohibiting Appellant from cross-examining O.V. about her prior prompt complaint.[11]

For the foregoing reasons, we conclude that the trial court did not commit an abuse of discretion.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 12/20/19

---

[11] We note that on appeal, Appellant contends that the trial court "prohibited [defense] counsel from challenging [O.V.'s] credibility." Appellant's Brief at 14. This is belied by the record. A review of trial testimony proves that Appellant questioned O.V., O.V.'s mother, Tanya, and Michelle Kline, an employee of Philadelphia Children's Alliance, about the circumstances surrounding O.V.'s disclosure of the sexual abuse. *See* N.T. Trial (Jury) Volume 1, 1/24/18, at 81-86 and 179-182; 1/25/18, 27-28 and 74-77. The trial court permitted Appellant to argue that O.V. fabricated the allegations against Appellant, and in turn, challenge her credibility, by showing that O.V. did not disclose the abuse until her mother confronted her about being truant from school and possibly engaging in sexual activity. *See id.* Thus, upon review, we conclude that the trial court permitted Appellant sufficient latitude in developing an ulterior motive to report Appellant's sexual assault and reasonably limited Appellant's cross examination of O.V. by preventing Appellant from introducing the lone fact that, on a previous occasion, she was sexually abused by her stepfather "given its marginal relevance on the issue of prompt complaint." *Wall*, 606 A.2d at 457.