J-A17037-22

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

COMMONWEALTH OF PENNSYLVANIA : IN THE SUPERIOR COURT OF
: PENNSYLVANIA
:
v. :
:
:
:
JOSEPH ALLEN :
:
Appellant : No. 2157 EDA 2021

Appeal from the Judgment of Sentence Entered October 13, 2021
In the Court of Common Pleas of Chester County Criminal Division at
No(s): CP-15-CR-0002549-2020

BEFORE:   PANELLA, P.J., NICHOLS, J., and COLINS, J.[*]

MEMORANDUM BY COLINS, J.:                      **FILED AUGUST 31, 2022**

Appellant, Joseph Allen, appeals from the aggregate judgment of

sentence of 10 to 23 months' imprisonment followed by one year of probation,

which was imposed after his jury trial conviction for attempt to commit

aggravated indecent assault and indecent assault.[1]  For the reasons set forth

below, we affirm.

This case arises out of events that occurred at Jake's Bar in West

Chester, Pennsylvania on July 25, 2020.  That evening, while Victim was

sitting by herself at the bar, a woman approached Victim and asked her to

play shuffleboard and introduced Victim to Appellant.  Trial Court Opinion,

_____

[*] Retired Senior Judge assigned to the Superior Court.

[1] 18 Pa.C.S. §§ 901 and 3125(a)(1) and 18 Pa.C.S. § 3126(a)(1), respectively.

12/13/21, at 1-2; N.T. Trial, 6/14/21, at 79-81. Victim and Appellant, who did not know each other, began playing shuffleboard together at the same end of the shuffleboard table. Trial Court Opinion, 12/13/21, at 2; N.T. Trial, 6/14/21, at 81-87. After they had been played shuffleboard for a while, Appellant made a series of advances on Victim, including touching her rear end, reaching under her skirt multiple times, touching the outside of the crotch of her underwear once and later touching inside her underwear while attempting to penetrate her vagina with his fingers, and also touching her breasts. Trial Court Opinion, 12/13/21, at 2; N.T. Trial, 6/14/21, at 87-93; N.T. Trial, 6/15/21, at 33-34, 38-39, 43-44; Commonwealth Ex. 2. Victim did not give Appellant any indication that the advances were welcome, removed Appellant's hands from her breasts, and when he touched inside her underwear, she walked away from him and the shuffleboard game. Trial Court Opinion, 12/13/21, at 2; N.T. Trial, 6/14/21, at 91-93, 106-07; N.T. Trial, 6/15/21, at 34, 37-38, 40-43, 45; Commonwealth Ex. 2.

The encounter between Victim and Appellant was captured on Jake's Bar's video surveillance system. Trial Court Opinion, 12/13/21, at 2; Commonwealth Ex. 2. After Appellant and the people that he was with left, Victim spoke to the bouncer at Jake's bar and told him that she had been inappropriately touched. N.T. Trial, 6/14/21, at 98; N.T. Trial, 6/15/21, at 134. Two days after the incident, Victim reported the assault to the West Chester police. Trial Court Opinion, 12/13/21, at 2.

Appellant was arrested and charged with attempt to commit aggravated indecent assault and indecent assault. Between May 11, 2021 and May 20, 2021, Appellant filed several pretrial motions, including a motion *in limine* to admit statements that the Victim made to Detective Collins of the West Chester police concerning prior instances where she had been sexually assaulted by others and a motion to suppress statements made by Appellant. On June 7, 2021, Appellant filed a motion to amend his motion to admit Victim's statements to also seek admission of a statement that she made to the bouncer at Jake's Bar that she had been inappropriately touched before. In his motions to admit Victim's statements, Appellant contended that the statements were relevant to challenge Victim's credibility and that the Rape Shield Law[2] did not bar their admission. On May 24, 2021, the Commonwealth filed a motion to amend the information to add a charge of aggravated indecent assault.

On June 7, 2021, following two hearings, the trial court entered an Order and Opinion in which it denied Appellant's motion *in limine* to admit statements that the Victim made to Detective Collins and granted both Appellant's motion to suppress and the Commonwealth's motion to amend the information. Trial Court Opinion and Order, 6/7/21, at 4-11. The trial court also subsequently denied Appellant's motion *in limine* to admit Victim's

---

[2] 18 Pa.C.S. § 3104.

statement to the bouncer. N.T. Trial, 6/14/21, at 15-16; N.T. Trial, 6/15/21, at 49-50.

Appellant proceeded to a jury trial on June 14, 2021. At trial, Victim testified concerning the assault and the video of the encounter between Victim and Appellant was admitted in evidence and played to the jury. Victim testified that after she and Appellant had played two rounds of shuffleboard without incident and they began playing again after a break, Appellant put his hand on her rear end and when she bent over to shoot the shuffleboard quoit, she felt Appellant put his hand up under her skirt and rub her vagina over her underwear. N.T. Trial, 6/14/21, at 87-90; N.T. Trial, 6/15/21, at 33, 43. Victim testified that Appellant later pulled her to him and put his hands on her breasts and that she told him to stop and pushed his hands off her breasts. N.T. Trial, 6/14/21, at 91-92; N.T. Trial, 6/15/21, at 34. Victim testified that after she removed Appellant's hands when she bent over again to take her turn, Appellant put his hand up her skirt, moved her underwear aside and attempted to put his fingers in her vagina. N.T. Trial, 6/14/21, at 90-93; N.T. Trial, 6/15/21, at 33, 42-45. Victim testified that she then walked to the bathroom to compose herself and that when she came back out, she told Appellant that what he did was inappropriate and went back to her seat at the bar. N.T. Trial, 6/14/21, at 93-94; N.T. Trial, 6/15/21, at 46. Victim testified that Appellant later came over to her while she was seated at the bar, that she again told him that what he did was not okay, and that Appellant in

- 4 -

response said "apologies" and walked away. N.T. Trial, 6/14/21, at 94-95. Victim testified that she did not walk away when Appellant first touched her under her skirt because she was scared and froze. N.T. Trial, 6/15/21, at 47-48.

The video showed Appellant repeatedly putting his hand on Victim's rear end and reaching under her skirt four times when Appellant and Victim stood next to each other playing shuffleboard at the same end of the shuffleboard table. Commonwealth Ex. 2; Commonwealth Exs. 14, 18, 19, 20, 24; N.T. Trial, 6/15/21, at 34-35. The video showed that during this portion of the shuffleboard game, Victim generally stood at a distance from Appellant except when she was shooting the shuffleboard quoit and that Appellant put his hand on Victim's rear end and under her skirt when she was near him to take her turn. Commonwealth Ex. 2. The video later showed Appellant putting his arms around Victim, Victim moving his arms off her breasts, and Appellant again reaching under Victim's skirt for the fourth time after she moved his arms off her breasts, at which point Victim pulled her skirt away from him, turned toward him, and walked away from the shuffleboard table toward the restroom. *Id.*; Commonwealth Exs. 22, 23, 24, 25; N.T. Trial, 6/15/21, at 34-35.

The Commonwealth also called as witnesses a woman in the group that came to Jake's Bar with Appellant, the bouncer and bartender who were at Jake's Bar on the night of July 25, 2020, relatives and friends of Victim to

whom she reported the assault that night and the next morning, and Detective Collins, who interviewed Victim when she reported the assault to police and conducted the investigation. The woman who came to the bar with Appellant's group testified that she invited Victim to played shuffleboard because she had asked Appellant if he wanted to meet Victim and Appellant said yes. N.T. Trial, 6/15/21, at 158-60, 192. The woman testified that she did not see Appellant touch Victim at all, but that Victim told her as the woman was leaving the bar later that Appellant had touched her inappropriately. *Id.* at 163, 166-67, 169-70, 200. The bouncer testified that he did not see anything happen between Victim and Appellant, but that toward the end of the night, Victim approached him at the bar and told him that the guy who had been playing shuffleboard with her had touched her inappropriately. *Id.* at 209, 211-12, 218. The bartender identified Appellant as the person playing shuffleboard with Victim, but testified that he did not see any incident between Victim and Appellant. N.T. Trial, 6/16/21, at 14-16, 22.

Appellant called as a witness a female friend of his who arrived at Jake's Bar while Appellant and Victim were playing shuffleboard. This witness testified that Appellant and Victim were flirting and that she told Appellant to stay away from Victim. N.T. Trial, 6/16/21, at 114, 121-22. She testified, however, that she was facing away from Appellant and Victim most of the time and did not see any contact between them and that she characterized them as flirting only because she saw them talking and saw Victim lean toward

Appellant to talk to him one time. *Id.* at 114, 122-24. Appellant also called five character witnesses, but did not testify in his own defense.

On June 16, 2021, the jury found Appellant guilty of attempted aggravated indecent assault and indecent assault and not guilty of aggravated indecent assault. N.T. Trial, 6/17/21, at 3-5; Verdict Slip. The trial court sentenced Appellant on October 13, 2021 to 10 to 23 months' incarceration on the attempted aggravated indecent assault conviction and a consecutive one year of probation on the indecent assault conviction. N.T. Sentencing at 56-58; Sentencing Sheet. In addition, the trial court imposed fines and costs and lifetime registration pursuant to the Sexual Offender Registration and Notification Act (SORNA)[3] as a Tier III offender. N.T. Sentencing at 57-58; Sentencing Sheet.

On October 15, 2021, Appellant filed this timely direct appeal. Appellant presents only the following single issue for our review:

> Whether the trial court abused its discretion and/or erred as a matter of law, and thereby violated the defendant's right of confrontation guaranteed under the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution, by excluding on grounds of relevance and/or the Rape Shield Law, the recorded statements of the

---

[3] 42 Pa.C.S. § 9799.10, *et seq*. While the trial court referred to the registration requirements as "Megan's Law," the registration notification requirement form appropriately cited the requirements pursuant to SORNA and the trial court notified Appellant of the correct registration requirements at sentencing. Registration Notification Requirements Colloquy Form, 10/13/21; N.T. Sentencing at 57-58. *See* 42 Pa.C.S. § 9799.14(d)(7), (14); 42 Pa.C.S. § 9799.15(a)(3).

complainant made to the arresting officer and a testifying prompt complaint witness regarding prior allegations of past sexual assaults of the complainant, where such statements are relevant to assess the complainant's credibility, are relevant to bias and/or a motive to fabricate, and are relevant to how the complainant reacted to the alleged indecent contact?

Appellant's Brief at 5. Appellant has not raised any issue in this appeal concerning any aspect of his sentence.[4]

A trial court's rulings regarding the admissibility of evidence may be reversed only where an abuse of discretion is shown. ***Commonwealth v. Rogers***, 250 A.3d 1209, 1215 (Pa. 2021); ***Commonwealth v. L.N.***, 787 A.2d 1064, 1068 (Pa. Super. 2001). Misapplication or overriding of the law constitutes an abuse of discretion. ***Rogers***, 250 A.3d at 1215; ***Commonwealth v. Lowmiller***, 257 A.3d 758, 763 (Pa. Super. 2021). Whether evidence was properly excluded under the Rape Shield Law is an issue of law as to which our review is *de novo* and plenary. ***Rogers***, 250 A.3d at 1215.

The Rape Shield Law provides that

> **[e]vidence of specific instances of the alleged victim's** past sexual conduct, **past sexual victimization, allegations of past sexual victimization**, opinion evidence of the alleged victim's past sexual conduct, and reputation evidence of the alleged

---

[4] We note that challenges to the constitutionality of lifetime SORNA registration are challenges to the legality of sentence and may therefore be raised by a defendant for the first time on appeal. ***Commonwealth v. Thorne***, 276 A.3d 1192 (Pa. 2022). Appellant, however, has not asked this Court to rule on the constitutionality of his lifetime SORNA registration or requested any remand for him to seek a hearing to introduce evidence supporting a challenge his lifetime SORNA registration in accordance with ***Commonwealth v. Torsilieri***, 232 A.3d 567 (Pa. 2020).

victim's past sexual conduct **shall not be admissible** in prosecutions of any offense listed in subsection (c) except evidence of the alleged victim's past sexual conduct with the defendant where consent of the alleged victim is at issue and such evidence is otherwise admissible pursuant to the rules of evidence.

18 Pa.C.S. § 3104(a) (emphasis added). The Rape Shield Law applied to Appellant's trial, as Appellant was charged with the offenses of aggravated indecent assault, attempt to commit aggravated indecent assault, and indecent assault. 18 Pa.C.S. § 3104(c).

The statements made by Victim to Detective Collins that Appellant sought to admit in evidence and that the trial court excluded were statements that she had been sexually assaulted and groped previously and had been raped three times, and that with respect to the prior rapes,

> The first time, I never – I didn't do anything, because my friend like kind of shamed me for it. The second time I don't – I don't know what happened. And the third time I was in California and they couldn't do anything for me either. So no. I've never had any kind of like justice for the shit that's been done to me.

N.T. Motion in Limine, 6/2/21, at 68-71. The other evidence that Appellant sought to admit and that the trial court excluded was a statement by the bouncer that when Victim told him on the night of the incident that she had been inappropriately touched, she also said that "something like this had happened" to her before at a bar in West Chester. Defendant's Motion to Amend Previously Filed Motion in Limine to Include Complainant's Statements to Patrick Matta ¶¶5, 8. These statements to Detective Collins and the bouncer are all evidence to which the Rape Shield Law applies, as they are

"[e]vidence of specific instances of the alleged victim's … past sexual victimization [and] allegations of past sexual victimization," and do not fall within its express exception for past sexual conduct with the defendant, as none of the prior incidents involved Appellant. 18 Pa.C.S. § 3104(a).

Our courts have recognized that additional exceptions to the Rape Shield Law are permitted where necessary to prevent violation of the defendant's right to cross-examine witnesses under the confrontation clauses of the Sixth Amendment to the United States Constitution and Article 1, Section 9 of the Pennsylvania Constitution. **Rogers**, 250 A.3d at 1216-18; **Commonwealth v. Fernsler**, 715 A.2d 435, 439 (Pa. Super. 1998); **Commonwealth v. Guy**, 686 A.2d 397, 400 (Pa. Super. 1996). Evidence of the alleged victim's sexual history has thus been held admissible where it shows that the alleged victim had a bias or hostility toward the defendant or a motive to fabricate the allegations, **Rogers**, 250 A.3d at 1217-18; **Fernsler**, 715 A.2d at 440, or where the evidence is statement by the alleged victim that directly contradicts her accusation against the defendant. **Commonwealth v. K.S.F.**, 102 A.3d 480, 482–86 (Pa. Super. 2014) (statement by victim that she has never had sex made subsequent to the sexual assaults of which she accused defendant admissible notwithstanding Rape Shield Law).

Such judicial exceptions to the Rape Shield Law do not, however, permit admission of sexual history evidence not involving the defendant simply because the defendant feels that such evidence will provide helpful cross-

examination. The Sixth Amendment to the United States Constitution and Article 1, Section 9 protect the defendant's right to reasonable cross-examination, "not cross-examination that is effective in whatever way, and to whatever extent, the defense might wish." ***Rogers***, 250 A.3d at 1216 (quoting ***United States v. Owens***, 484 U.S. 554 (1988)). To determine whether evidence subject to the Rape Shield Law may be admitted to challenge credibility, the court is required to balance the following factors: 1) whether the evidence is relevant to show bias or motive or to attack credibility; 2) whether the probative value of the evidence outweighs its prejudicial effect; and 3) whether there are alternative means of proving bias or motive or to challenge credibility. ***Commonwealth v. Jerdon***, 229 A.3d 278, 285-286 (Pa. Super. 2019); ***K.S.F.***, 102 A.3d at 483–84; ***Commonwealth v. Black***, 487 A.2d 396, 401 (Pa. Super. 1985) (*en banc*).

Appellant argues that the trial court erred in excluding Victim's statements because they were relevant to show that Victim harbored a bias against Appellant and had a motive to fabricate the allegations against him and that the probative value of these statements to show bias or motive to fabricate outweighed the prejudicial effect of admitting such evidence.[5] We do not agree.

---

[5] Although Appellant refers briefly the issue of how Victim reacted to his assaults in his Statement of the Question Involved, Appellant's Brief at 5, Appellant does not contend anywhere in the argument section of his brief that
*(Footnote Continued Next Page)*

- 11 -

As the trial court correctly held, Trial Court Opinion and Order, 6/7/21, at 7-9; Trial Court Opinion, 12/13/21, at 3-4, Victim's statements concerning the prior assaults could not give the jury reason to believe that Victim harbored a bias against Appellant or had any motive to fabricate charges against him. Cases where we have held that sexual history evidence may be admissible to show bias or motive to fabricate have involved evidence that supported an inference that the alleged victim had a specific bias against the defendant because the defendant had interfered with a sexual relationship between her and a third party shortly before she made the accusation, *Commonwealth v. Palmore*, 195 A.3d 291, 294-99 (Pa. Super. 2018); *Black*, 487 A.2d at 398-99, evidence that the alleged victim threatened retaliation for reporting her sexual relationship, *Commonwealth v. Northrip*, 945 A.2d 198, 204-05 (Pa. Super. 2008), or evidence that the alleged victim had been charged with misconduct and had reason to make the accusations to deflect or obtain favorable treatment on those charges. *Commonwealth v. Ruggiano*, 14 A.3d 844, 846-49 (Pa. Super. 2010), *vacated on other grounds*, 26 A.3d 473 (Pa. 2011); *Fernsler*, 715 A.2d at 440; *Commonwealth v. Eck*, 605 A.2d 1248, 1254-55 (Pa. Super. 1992).

---

Victim's statements should have been admitted because they were relevant to the jury's evaluation of how Victim reacted and instead argues only that her statements were relevant to show bias or motive to fabricate.

Here, Victim's statements did not contain any threat of retaliation and there were no charges or misconduct allegations against Victim that could provide any motive to fabricate accusations of sexual assault. Moreover, the prior assaults were by third parties and there is no evidence that they had any connection to Appellant or the events of July 25, 2020 at all. Those assaults therefore could provide no basis to infer that Victim had any bias against or hostility toward Appellant or reason to make false accusations against him. The fact that a sexual assault complainant has been a victim of sexual assaults by persons other than the defendant creates no logical inference that she has a motive to fabricate accusations against the defendant and has no probative value with respect to her credibility or the defendant's guilt or innocence. *L.N.*, 787 A.2d at 1069; *Commonwealth v. Boyles*, 595 A.2d 1180, 1185-87 (Pa. Super. 1991); *Commonwealth v. Salazar*, No. 735 EDA 2020, 736 EDA 2020, 737 EDA 2020, at 8-10 (Pa. Super. filed Oct. 1, 2021) (unpublished memorandum).

Indeed, even if Appellant had asserted that Victim had falsely accused others of sexually assaulting her, that evidence could not be introduced to attack her credibility. Evidence that a witness has made false statements or accusations on other occasions is not admissible to impeach the witness's credibility. Pa.R.E. 608(b)(1) ("the character of a witness for truthfulness may not be attacked or supported by cross-examination or extrinsic evidence concerning specific instances of the witness' conduct" other than criminal

convictions bearing on credibility); ***Commonwealth v. Golphin***, 161 A.3d 1009, 1026-27 (Pa. Super. 2017); ***Commonwealth v. Minich***, 4 A.3d 1063, 1072-73 (Pa. Super. 2010).[6]

Appellant has not shown that the statements that the trial court excluded contain anything else that bears adversely on Victim's credibility or is exculpatory.  Appellant does not contend that the excluded statements were inconsistent with or contradicted Victim's testimony at trial. Contrary to Appellant's conclusory assertions, Victim's statement that "I've never had any kind of like justice for the shit that's been done to me" does not support a reasonable inference that she had any motivation to make accusations against Appellant that she did not believe to be true, as there is no evidence that any of the past wrongs for which she felt that she did not get justice in any way involved Appellant.  Rather, such a statement suggests only an explanation for her willingness to report what she believed happened to her and to persist with criminal charges despite the ordeal of a criminal prosecution and trial.

Moreover, even if Victim's statements had some minor probative value, it would be outweighed by the prejudicial effect of admitting the statements.

---

[6] ***Commonwealth v. Schley***, 136 A.3d 511 (Pa. Super. 2016) is not to the contrary.  In ***Schley***, the evidence of prior false accusations was admissible not to impeach the victim's testimony but to show that the defendant had reason to disbelieve the victim's report of sexual abuse because the defendant knew of the past false accusations and that the defendant therefore lacked the *mens rea* to support a conviction for endangering the welfare of a child. ***Id.*** at 518.

- 14 -

The purpose of the Rape Shield Law is to prevent a sexual assault trial from shifting its focus from the culpability of the accused and degenerating into an attack on the victim's character. **Rogers**, 250 A.3d at 1215-16; **Jerdon**, 229 A.3d at 285. Putting before a jury the fact that a victim has been sexually assaulted by others on multiple occasions would invite the jury to blame the victim for putting herself in positions where she is vulnerable to assault, rather than properly deciding the case on the evidence of the crime with which the defendant is charged.

For the foregoing reasons, we conclude that the trial court did not commit any error of law or abuse of discretion in excluding Victim's statements concerning prior sexual assaults. Because Appellant's sole issue in this appeal is without merit, we affirmed Appellant's judgment of sentence.

Judgment of sentence affirmed.

Judgment Entered.

Joseph D. Seletyn, Esq.
Prothonotary

Date: 8/31/2022

- 15 -